**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| **JET SYSTEMS, LLC**<br>48015-1 Pine Hill Run Road<br>Lexington Park, Maryland 20653<br><br>       Plaintiff,<br><br>v.<br><br>**J.F. TAYLOR, INC.**<br>45671 Pleasant Mill Drive<br>Great Mills. Maryland 20634<br><br>SERVE ON:<br>Tammy Marie Sparks, Registered Agent<br>45671 Pleasant Mill Drive<br>Great Mills, Maryland 20634<br><br>       Defendant. | ) <br>) <br>) <br>) <br>) Civil Action No. _____<br>) <br>) <br>) TRIAL BY JURY DEMANDED<br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

## **COMPLAINT**

Plaintiff JET Systems, LLC ("JET"), by and through undersigned counsel, brings this Complaint against Defendant J.F. Taylor, Inc. ("JFTI") and states as follows:

## **INTRODUCTION**

1. This case arises out of concerted action by the United States Navy ("USN") and Defendant JFTI to misappropriate Plaintiff's proprietary Adaptive Layer Framework ("ALF") software products and documentation to use for their own purposes without compensating Plaintiff and causing Plaintiff further reliance and consequential damages.

2. Plaintiff alleges herein that Defendant JFTI has (1) infringed Plaintiff's copyright in its computer source code by unauthorized copying; (2) violated the Defend Trade Secrets Act by misappropriating Plaintiff's trade secrets; (3) committed the common law tort of conversion in exercising unauthorized dominion over Plaintiff's personal property;

(4) violated the Maryland Uniform Trade Secrets Act by misappropriating Plaintiff's trade secrets; and (5) breached a purchase order with JET for its software and documentation by not making payment after JET delivered its software and documentation in compliance with the purchase order.

### PARTIES

3.      Plaintiff JET is a Maryland corporation with its principal place of business located at 48015-1 Pine Hill Run Road, Lexington Park, Maryland 20653. JET develops, maintains, and innovates systems for specific and common mission capabilities, combat aides, and surveillance systems. JET supports platforms related to Small Unmanned Aerial Vehicles (SUAV), UAV, and manned vehicles for the Department of Defense ("DoD"), the National Aeronautics and Space Administration ("NASA"), the Department of the Army ("DoA"), and other government agencies. JET provides solutions through cost-effective, tailored strategies to meet mission requirements to include both new software generation and certified software re-use. In return, the government utilizes JET to provide ongoing support activity or to prepare the customer to be a lead systems integrator. JET has developed its proprietary Adaptive Layer Framework ("ALF") software products and documentation.

4.      Defendant JFTI is a Maryland corporation with its principal place of business located at 45671 Pleasant Mill Drive, Great Mills, Maryland 20634. According to its website www.jfti.com, JFTI "specializes in delivering high-tech products and solutions to keep our military strong and our warfighters safe," and has "40 years of experience as a design, engineering, and manufacturing company."

## JURISDICTION AND VENUE

5.      This Court has original federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 over Plaintiff's claims for copyright infringement and violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*, and also pursuant to 28 U.S.C. § 1338 for copyright infringement.

6.      Pursuant to 28 U.S.C. § 1367, this Court should exercise supplemental jurisdiction over the state law claims asserted herein because such claims are so related to the copyright infringement claim and the violation of the Defend Trade Secrets Act claim in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

7.      This Court has *in persona* jurisdiction over Defendant JFTI in that Defendant is incorporated under the laws of Maryland and its principal office is located in Maryland.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) in that both Plaintiff and Defendant reside in this judicial district; and venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

9.      As part of its contract with the United States Navy ("USN") to design, develop, build, and test prototype computers for the NAVAIR PMA-209 Air Combat Electronics Program Office ("PMA-209") Mission Computer Adjunct Processor ("MCAP") Program, the USN asked JFTI to issue a purchase order to JET for JET's proprietary Baseline ALF software products and documentation.

10.    JFTI issued the Request for Quote, a copy of which is attached as Exhibit A hereto.

11.    JET responded with a Quote, a copy of which is attached as Exhibit B hereto.

12.    JFTI accepted JET's bid and issued Purchase Order ("P.O. 309975"), a copy of which is attached as Exhibit C hereto.

13.    P.O. 309975 was issued pursuant to Standard Terms and Conditions ("ST&C") appearing on JFTI's website. A copy of the ST&C is attached as Exhibit D hereto.

14.    The ST&C, Paragraph 28, summarizes the applicable DFARS/FAR Clauses for all procurements, included among which is DFARS 252.227-7014 (Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation).

15.    DFARS 252.227-7014 applies to P.O. 309975 because JET's proprietary Baseline ALF software products and documentation are not "commercial computer software" and its documentation as defined in Sections (a)(1) and (5) of the DFARS.

16.    Had the contract gone forward, the Government might have rights in the delivered software and the documentation pursuant to DFARS 252.227-7014(b)(3), but the contract did not go forward when the Government breached its contract with JFTI in which Plaintiff was a third-party beneficiary and when JFTI canceled P.O. 309975.

17.    P.O. 309975 required delivery of the software and documentation on or before September 11, 2022.

18.    The only contract by and between the parties is set forth in the items discussed above and attached as Exhibits A-D hereto. There are no other written agreements by

and between JET and JFTI with regard to the legal defined deliverables as delineated in the Request for Quotation, Quote, and P.O. 309975.

19.     On or about September 9, 2022, after discussions with the Government, JET delivered a copy of its source code and documentation directly to the Government.

20.     On or about September 22, 2022, by his signature, Kevin Pilkerton of PMA-209/Multi-Use Laboratory Environment ("MULE") signed for receipt of a DVD comprising ALF PowerPC 653 Supplemental Software. On September 26, 2022 Kevin Pilkerton signed for receipt of a DVD comprising ALF PowerPC 653 Test Cases. Copies of the two signed receipts are attached as Exhibit E.

21.     On or about September 27, 2022, Matt Campbell of JFTI sent an email to Scott Jaster of JET, relaying to JET a request from the Government to amend P.O.309975 to include delivery of products and services not included in P.O. 309975 (ALF Core, SDK, and support to MULE), in exchange for "a 50% payment for what you have delivered so far." A copy of the September 27, 2022 email from Matt Campbell is attached as Exhibit F. Given that JET had already fully met its obligations under P.O. 309975, JET did not accept the coercive offer from JFTI and the Government.

22.     In a text message exchange on October 18, 2022 between Scott Jaster of JET and Jeff Williamson of PMA-209/MULE while the Government was withholding payment on P.O. 309975, Williamson states " I worked to get you 50% you did[n't] take it." After Scott Jaster explains that JET has satisfied its obligations under P.O. 309975, Williamson responds "It's out of my hands." A copy of the October 18, 2022 text message exchange is attached as Exhibit G.

23.     On or about November 10, 2022, the Government sent a Letter of Concern to JFTI falsely claiming that the delivered software was incomplete and requesting a response by close of business on November 18, 2022, as to how JFTI intended to remedy the content of the deliverable. A copy of the Government's Letter of Concern is attached as Exhibit H hereto.

24.     JFTI then sent a letter to JET dated November 14, 2022, informing JET that it considered JET to be in breach of P.O. 309975 based on the Government's Letter of Concern and provided JET until 12:00 noon on Wednesday November 23, 2022, to complete performance and cure its alleged breach. A copy of JFTI's November 14, 2002, letter is attached as Exhibit I hereto.

25.     JET denied any breach and commenced negotiations, but JFTI failed to acknowledge that JET had complied with the terms and conditions of the purchase order. By letter dated December 9, 2022, JFTI notified JET that P.O. 309975 was terminated for cause. A copy of JFTI's December 9, 2022, letter is attached as Exhibit J hereto.

26.     JFTI made no payments to JET under the purchase order, which was wrongfully terminated.

27.     JET has registered its copyright in the software code for its proprietary Adaptive Layer Framework software (Registration Number TX 9-384-065).

28.     On or about February 27, 2023, JFTI returned a Compact Disk containing the delivered software and documentation to JET. However, before returning the software, upon information and belief, and as shown below, JFTI and the Government made

unauthorized copies in violation of JET's registered copyright in the software and constituting misappropriation of trade secrets and conversion.

29.     On or about 12:30 p.m. December 5, 2022, a telephone conference was held between Scott Jaster of JET; and Wayne Taylor, Matt Campbell, Natalie Morris, and Tammy Sparks, all of JFTI. A copy of the conference call notice sent by Matt Campbell of JFTI is attached as Exhibit K. On information and belief, the conference call notice was sent to all named conference call participants.

30.     During the December 5, 2022 conference call, JFTI personnel admitted that they evaluated the ALF software that JET had delivered to the Government. This admission is memorialized in the email sent from Scott Jaster to Tammy Sparks of JFTI on Wednesday, December 14, 2022 at 10:22 AM ("It was stated in the last phone call meeting that JFTI reviewed and assessed the delivered products, and that they "agree" with the Government's assessment.") The same admission was again memorialized in an email from Scott Jaster to Tammy Sparks on December 15, 2022 at 11:11 AM. Copies of the December 14, 2022 and December 15, 2022 emails are attached as Exhibit L.

31.     In an email sent September 28, 2022, Kevin Pilkerton of PMA-209 announced that the MULE team had successfully built the JET delivered ALF software in VxWorks. In order to accomplish this build, the PMA-209/MULE team necessarily copied the ALF software. A copy of the September 28, 2022, email from Kevin Pilkerton of PMA-209 is attached as Exhibit M.

32.     On information and belief, JFTI copied ALF software ostensibly under JFTI Prime Contract number N00421-22-9-0003, paragraph 2.4.1.10 Reusable Software Products:

The Performer (JFTI) shall integrate ALF into the MCAP software environment during the modification phase, coordinating with the Government as needed during SETR events. The Performer (JFTI) shall deliver the updated ALF software, with Government Purpose Rights, using DI-IPSC-81488 as guidance (Deliverable D68).

33.     The Government in collaboration with JFTI also made the software and its documentation available to other parties, including Precise Systems. Specifically, on information and belief, PMA-209 awarded Support Contract number N0042122R3013 to Secise/Precise around January 10, 2024. In the Statement of Work published by PMA-209, on June 15, 2023, the contract was to be awarded to a contractor having "[d]emonstrated experience with adaptive layer framework." A copy of the relevant contract paragraphs is attached at Exhibit N.

34.     On information and belief, Support Contract number N0042122R3013 was withdrawn from Secise/Precise Systems amid allegations of unethical behavior by Secise/Precise Systems.

35.     On September 28, 2022 in an email to Peter Allen of JET Systems, Kevin Pilkerton of PMA-209/MULE explained that PMA-209/MULE had ALF products up and running in its lab, including implementations of JET's latest versions of SDK, Core, labor/training and software adapters to account for the PMA-209/MULE lab's deficiencies, and sought help from JET Systems to overcome the deficiencies. A copy of the September 28, 2022 email from Kevin Pilkerton to Peter Allen is attached as Exhibit M.

36.     PMA-209 was sufficiently aware of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI, that

PMA-209 accepted delivery of ALF software directly from JET, instead of from the Prime contractor JFTI.  Despite this awareness, PMA-209 returned its authorized copy of ALF not directly to JET Systems, but rather to JFTI. These facts are admitted in a November 13, 2023 letter from Commander, Naval Air Systems Command to Office of the National Ombudsman, U.S. Small Business Administration, a copy of which is attached as Exhibit O.

37.     Consistent with its awareness of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI, PMA-209 instructed JFTI to amend the PO to include direct delivery of ALF Core and SDK to the Government. Matt Campbell of JFTI confirmed this in the email to Scott Jaster dated September 27, 2022 attached as Exhibit F.

38.     Even prior to receiving the instructions from PMA-209 regarding delivery of ALF directly to the Government by JET Systems, JFTI had given similar instructions to JET Systems, in a letter dated August 5, 2022.  A copy of the August 5, 2022 letter is attached as Exhibit P.

39.     In a text message exchange September 6 – 7, 2022, Jeff Williamson of PMA-209/MULE acknowledged JET Systems' desire to avoid delivery of ALF software to or through JFTI. The text message exchange of September 6 – 7 is attached as Exhibit Q.

40.     In an email of August 18, 2022, Kim Skidmore of JFTI confirmed and approved that JET Systems would deliver ALF directly to the Government. The August 18, 2022 email is attached as Exhibit R.

## CAUSES OF ACTION

## COUNT I: INFRINGEMENT OF COPYRIGHT

41.     Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-40.

42.     Plaintiff has registered its copyright in the software code for its proprietary ALF software. The registration number is TX 9-384-065.

43.     The Government received the software and documentation as a deliverable under P.O. 309975 and had access to the software code.

44.     Without authorization from JET, the Government copied and shared the copyrighted software code and documentation with Defendant JFTI. JFTI has also copied the code and documentation without Plaintiff's authorization.

45.     To prove a cause of action for copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) that the defendant copied the original elements of that copyrighted material. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)(citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

46.     Plaintiff can and will prove each of these elements. Plaintiff's ALF software code is an original work developed by JET. JFTI copied the code or used the code, which entailed copying, obtained from the Government without authorization from JET.

47.     Plaintiff has suffered actual damages from lost business and revenue as a result of JFTI's unauthorized use of its code, and pursuant to 17 U.S.C. § 504, seeks an award of its actual damages or the profits of JFTI from the infringement, if greater.

### COUNT II: VIOLATION OF THE DEFEND TRADE SECRETS ACT,

**18 U.S.C. §§ 1836 ET SEQ.**

48.     Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-47.

49.     Plaintiff's proprietary ALF software products and documentation are trade secrets as defined in 18 U.S.C. § 1839(3) as they are forms and types of technical and engineering information, including programs and codes which JET has taken reasonable measures to keep secret. Moreover, the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person, including Defendant JFTI, who can obtain economic value from the disclosure or use of the information.

50.     Defendant JFTI misappropriated Plaintiff's proprietary ALF software products and documentation by acquiring such trade secret information with actual or constructive knowledge that the information was acquired by improper means by the Government as defined in 18 U.S.C. § 1839(5)(A).

51.     Defendant JFTI misappropriated Plaintiff's proprietary ALF software and documentation by disclosing or using such information without Plaintiff's consent when at the time of the disclosure or use JFTI knew or had reason to know that the knowledge of the trade secret was:

- derived from or through a person who has used improper means, including breach of a duty to maintain secrecy, to acquire the trade secret;

- acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret of limit the use of the trade secret; or

- derived from or through a person who owed a duty to Plaintiff JET to maintain the secrecy of the trade secret or limit the use of the trade secret, as defined in 18 U.S.C. § 1839(5(B).

52.     Plaintiff's proprietary ALF software products and documentation are related to services used in or intended to be used in interstate commerce.

53.     Plaintiff is entitled to and seeks damages for actual loss caused by the misappropriation of the trade secret information and/or damages for unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss, as provided in 18 U.S.C. § 1836(b)(3)(B)(i), or alternatively, damages measured by the imposition of liability for a reasonable royalty for Defendant JFTI's unauthorized disclosure or use of the trade secret, as provided in 18 U.S.C. § 1836(b)(3)(B)(ii).

54.     Plaintiff also seeks exemplary damages in an amount not more than 2 times the amount of damages awarded under 18 U.S.C. § 1836(b)(3)(B) for Defendant JFTI's willful and malicious misappropriation as provided in 18 U.S.C. § 1836(b)(3)(C).

**COUNT III: COMMON LAW CONVERSION**

55.     Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-54.

56.     In Maryland, conversion is an intentional tort which covers the "wrongful exercise of dominion by one person over the personal property of another." *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 480-81 (Md. App. 1986).

57.      The element of intent that must be proven is the intent to exercise dominion and control over the plaintiff's property in a manner inconsistent with the plaintiff's rights.

"'The intent required is not necessarily a matter of conscious wrongdoing.'" *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200 (1985) (quoting W. Keeton, Prosser & Keeton on Torts, § 15 (5th ed.1984) (footnotes omitted)).

58.     By obtaining and using JET's proprietary software without its permission, JFTI has committed the tort of conversion.

59.     Plaintiff seeks its damages for the fair market value of the converted software, plus costs of recovery, including reasonable attorneys' fees, and punitive damages for JFTI's willful and malicious acts in exercising unauthorized dominion and control over Plaintiff's software.

## COUNT IV: VIOLATION OF MARYLAND UNIFORM TRADE SECRETS ACT (MUTSA)
### MD. COMMERCIAL LAW CODE §§ 11-1202 THROUGH 11-1207 (2022)

60.     Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-59.

61.     Plaintiff's proprietary ALF software products and documentation are trade secrets as defined in Md. Commercial Code, § 11-1201(e) as they are information, including a program, method, technique or process that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

62.     As defined in Section 11-1201, Defendant JFTI misappropriated Plaintiff's proprietary ALF software products and documentation, including by:

- acquiring the trade secret information knowing or having reason to believe that the trade secret was acquired by improper means, including breach of a duty to maintain secrecy;

- disclosure or use of the trade secret information without Plaintiff's consent when at the time of disclosure or use JFTI knew or had reason to believe that its knowledge of the trade secret was (1) derived from or through a person who had utilized improper means, including breach of a duty to maintain secrecy, to acquire it; (2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (3) derived from or through a person who owed a duty to Plaintiff JET to maintain its secrecy or limit its use. A "person" includes the Government.

63.     Plaintiff is entitled to and seeks damages for (1) the actual loss caused by misappropriation; and (2) the unjust enrichment cause by the misappropriation that is not taken into account in computing actual loss, as provided in Section 11-1203(b), and alternatively the damages  as measured by imposition of liability for a reasonable royalty for Defendant JFTI's unauthorized disclosure or use of the trade secret information, as provided in Section 11-1203(c).

64.     Plaintiff also is entitled to and seeks exemplary damages in an amount not exceeding twice any award made under Section 11-1203(b) for Defendant JFTI's willful and malicious misappropriation of the trade secret information.

65.     Plaintiff is also entitled to and seeks an award of reasonable attorneys' fees for JFTI's willful and malicious misappropriation of the trade secret information.

## <u>COUNT V: BREACH OF CONTRACT</u>

66.     Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-65.

67.     Plaintiff satisfied all terms and conditions of P.O. 309975 and yet Defendant did not pay the purchase price or make any payments at all.

68.     Under Maryland law, elements of a breach of contract are: (1) a contractual obligation and (2) a material breach of that obligation. *Chubb & Son v. C & C. Complete Servs., LLC,* 919 F. Supp. 2d 666, 678 (D. Md. 2013). Further, and under Maryland law, a claim asserting breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff .and a breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.,* 994 A.2d 430, 440 (Md. 2010) (*quoting Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)) The Exhibits provided herein along with the facts alleged in this Claim establish that a contract exists, JET performed its duties under the contract and JFTI failed to remit payment.  All of the foregoing is certain and definite.

69.     Any conditions precedent have been satisfied by JET. The clear intent of JET was that once there was compliance with the official request, the purchase order payment was due.

70.     The contract is clear that JET was to receive payment upon the compliance with the terms and conditions of the contractual documents cited herein. The simple language within such contractual documents makes it clear that the performance by JET evidences the satisfaction by JET of its performance under the contractual documents.

71.     As JET has fulfilled all conditions precedent[1], performance by JFTI, in remitting full payment (and now with interest given the vast amount of time since performance by JET was completed) is due without any excuse relative to performance by JFTI.

72.     Therefore, Plaintiff is entitled to damages that are the direct and natural result of the breach plus consequential damages for lost income from business operations that would have been made but for the breach. *See, e.g., CR-RSC Tower I, LLC v. RSC Tower I, LLC,* 429 Md. 387, 417-18 (2012).

73.     **The Request for Quote**. The August 5, 2022, request has, in part, the following language:

> "All Baseline ALF Documentation/Deliverables is to be delivered with Government Purpose data rights. No integration support or training is required at this time. The Government requests physical delivery of software and documentation via CD or via DoD SAFE. Government approval will be required in order to facilitate payment".

---

[1] Conditions precedent are conditions in a contract that must occur or be satisfied before the obligations in the contract are due. Before these conditions are satisfied, no duty has yet arisen. The Restatement (2d) of Contracts § 224 defines a condition precedent as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."   Under Maryland law, a "condition precedent" is "'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'" *N.Y. Bronze Powder Co., Inc. v. Benjamin Acquisition Corp.*, 716 A.2d 230, 233 n.2 (Md. 1998) (quoting *Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973)). Where a contract is subject to a condition precedent, a contractual obligation does not arise until that condition is satisfied. The existence of a condition precedent is ultimately a question of construction that depends on the parties' intent. *Azimirad v. HSBC Mortg. Corp.*, 2011 WL 1375970, at *4 (D. Md. Apr. 12, 2011) (quoting *N.Y. Bronze Powder Co.*, 716 A.2d at 233 n.2)). Although "no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional, as have the words 'when,' 'after,' 'as soon as,' or 'subject to.'" *N.Y. Bronze Powder Co.*, 716 A.2d at 233 n.2.

*See* Exhibit A hereto.

74.     The official request, as set forth above, indicates that no integration support or training was required. The "no training" language was in the original official request and in the purchase order (all prepared by JFTI). There was never a written agreement modifying the "no training" language. Delivery was made pursuant to the contract. It is noteworthy that JET delivered precisely that which it was to deliver, and the items delivered were subsequently verified to be delivered and completely functional by PMA-209/MULE.

75.     The Quote, attached as Exhibit B hereto, contains the following language:

> "Baseline ALF Software, to include build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable). All software is to be delivered with Government Purpose data rights. Baseline ALF Documentation and all related Deliverables."

76.     All "applicable" and available products were delivered as related to the defined list in the Request for Quote at section 2. A clear, concise, and exact list of the deliverables was sent to PMA-209; and there was an agreement as to those specific items only. The purchase order dollar amount confirmed the exactitude displayed as to that which was required from JET.

77.     Further, and for purposes of this claim, a build (or build instruction) is a set of executable code that is ready to be installed onto a customer's system. In this case, the software build was an ALF baseline product targeting VxWorks 653 operating system on PowerPC processor architecture. It was successfully verified as buildable and able to be installed in the government's lab on their system.

78.    **Training:** Although JET was not required to provide any training (or integration/support) according to the purchase order, JET was directed by JFTI under threat of being held not in compliance with the terms of the Purchase Order to provide training and integration/support post-delivery. JET, notwithstanding that it had no obligation to provide such training/instructions, did provide build instructions, two additional documents/guides, the latest capabilities/versions of SDK and Core (originally intended to be the immediately following purchase order and pre-funded as such on JFTI's contract in preparation), the project configuration files used to build/compile, software adapter products to account the MULE's lab deficiencies and lack of capability/knowledge, on-call support, and meetings.

79.    **The Government's Letter of Concern,** attached as Exhibit E hereto.

In Paragraph 6 within the Letter of Concern, it is stated that:

> "per the ALF ADD, Section 1.1 Paragraph 1, 'ALF is a
> modular and extensible framework that consists of ALF
> CORE, ALF SDK, ALF apps, and ALF Products.'"

The term "ALF" as it appears in the documentation refers to an overall program and is JET's own marketing name. The official Request for Quote and the purchase order requested a "Baseline ALF Software" product in line item #1, whose deliverables are enumerated in line item #2 of the official request. Training materials, guides, troubleshooting, lessons learned, etc. were explicitly NOT included in the delivery per the official request. Note that it is clear that, within the official request: "3: No integration support or training is required at this time."

80.     To better understand this, it is important to consider the definitions of each abbreviated item (none were required by the official Request for Quote or the purchase order):

a.      ALF Core - Contains the cross-platform ALF framework components and is the developer Application Programming Interface ("API") used by the ALF Framework. ALF Core does not include executable code. ALF Products can use ALF Core (but are not required) to target a specific operating environment (Hardware / Operating System). ALF Core comprises header files (function signatures) that define to software developers how to perform the following operations in ALF:

- Service Orchestration

- Transport Services

- Health Monitoring

- Diagnostic Services

Customers are able to write their own APIs as desired or purchase APIs from JET.

b.      ALF SDK – The development environment for ALF Applications and systems, including tools and plugins for Integrated Development Environments. ALF SDK enhances, does not replace, existing software development processes (such as WindRiver's Workbench) and is NOT part of the final mission product. The SDK is a separate product used to build ALF software components and includes the environment and tools that make a system image. The SDK components themselves are not part of or required for the final executable image

that would run on the system, they are only used to help JET and/or ALF users more rapidly develop that image. Customers are not bound to JET's SDK products; they are able to write their own SDK tools or purchase JET's.

c.      ALF App - An application that uses ALF Core and targets an ALF Product. ALF Apps may be deployed to any supported ALF Product. They also may be migrated to other ALF Products with reduced development time. ALF Apps can be reused to create more complex software capabilities. It is imperative to recognize that no ALF App was defined as a specific deliverable.

d.      ALF Product - An implementation of ALF that targets a specific operating system and processing architecture as requested by a customer.  In the case of this P.O., the ALF Product delivery was targeted towards VxWorks Operating System, and PowerPC Processing architecture, per the government's direction.

81.      Once again, it is noteworthy that JET verified with the MULE that the enumerated deliverable components have all been received by the Government, built (by the Government), deployed (by the Government), and are in working order. This has been demonstrated in both JET and MULE lab environments.

82.      Thus, JET has complied with the contract documents, has satisfied any conditions precedent relative to same, and is entitled to immediate and full payment from JFTI along with all interest from the date payment was due plus consequential damages.

83.      Further, The Letter of Concern in paragraph 2 also indicates that the software is to be delivered "using DL-PSC-81488" as guidance. There is no question that JET delivered the agreed upon software in a manner consistent with DL-PSC-81488.

WHEREAS Plaintiff prays for the following relief:

On Count I (Infringement of Copyright),

- Declaratory and injunctive relief; and

- Pursuant to 17 U.S.C. § 504, an award of actual damages or the profits of JFTI from the infringement, if greater.

On Count II (Violation of the Defend Trade Secrets Act),

- Declaratory and injunctive relief;

- Damages for actual loss caused by the misappropriation and/or damages for unjust enrichment that is not addressed in computing damages for actual loss;

- Alternatively, damages measured by the imposition of liability for a reasonable royalty; and

- Exemplary damages in an amount not more than 2 times actual damages for Defendant's willful and malicious misappropriation.

On Count III (Common Law Conversion):

- Declaratory and injunctive relief;

- Damages for the fair market value of the converted software plus costs of recovery, including reasonable attorneys' fees; and

- Punitive damages for Defendant's willful and malicious acts in exercising unauthorized dominion and control over Plaintiff's software.

On Count IV (Violation of Maryland Uniform Trade Secrets Act),

- Declaratory and injunctive relief;

- Damages for actual loss caused by the misappropriation and/or the unjust enrichment not taken into account in computing actual loss;

- Alternatively, damages as measured by imposition of liability for a reasonable royalty;

- Exemplary damages in an amount not exceeding twice any award of actual damages; and

- Reasonable attorneys' fees for Defendant's willful and malicious misappropriation.

On Count V (Breach of Contract),

- Declaratory and injunctive relief; and

- Actual damages that are the direct and natural result of the breach plus interest and consequential damages for lost income from business operations that would have been made but for the breach.

### **TRIAL BY JURY DEMANDED**

Plaintiff hereby demands a trial by jury on all issues in this Complaint triable of right by a jury.

Dated: June 5, 2024,                                  Respectfully submitted,

   /s/ Richard S. Toikka
Richard S. Toikka, Fed Bar No.13543
Russell O. Paige, Fed Bar No. 16035
*(reinstatement of active status pending)*
WILT TOIKKA KRAFT, LLP
1629 K Street, NW, Suite 300
Washington, DC 20006
202-508-3648 (phone)
240-888-8110 (mobile)
rtoikka@wtk-law.com (email)
rpaige@wtk-law.com (email)

Counsel for Plaintiff