**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | | |
|---|---|---|
| **JET SYSTEMS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 8:24-cv-1628-DKC** |
| | ) | |
| **J.F. TAYLOR, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT J.F. TAYLOR, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.      Introduction ................................................................................................................ 1

II.     Background ................................................................................................................ 3

III.    Argument ................................................................................................................... 7

        A.      Standard of Review ................................................................................... 8

        B.      JET Has Not Alleged Any Plausible Violations in the Complaint to
                Survive this Motion to Dismiss ............................................................... 10

                1.      JET's Allegation that Copies of its Software were Improperly
                        Made Must Be Dismissed as the Making of Such Copies is Legally
                        Permissible Under the Purchase Order ....................................... 10

                2.      Plaintiff's Trade Secret Claims Fail as a Matter of Law .......................... 11

                3.      The Claims Based on JET's Single, Unsupported "Upon
                        Information and Belief" Allegation Cannot Survive a Motion to
                        Dismiss ........................................................................................ 14

                4.      JET's Breach of Contract Claim Should Be Dismissed Because the
                        Complaint Fails to Allege Sufficient Facts to Establish that the JET
                        Software Met the Contractual Obligations ................................. 15

                5.      The Copyright Act Preempts Plaintiff's Conversion Claim .................... 17

IV.     Request for Oral Hearing ....................................................................................... 18

V.      Conclusion .............................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

**Page(s)**

*Albert S. Smyth Co., Inc. v. Motes*,
No. CV CCB-17-677, 2020 WL 4471524 (D. Md. Aug. 3, 2020) .......................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................. 3, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................... 3, 8, 9

*Biospherics, Inc. v. Forbes, Inc.*,
989 F.Supp. 748 (D. Md. 1997)............................................................................. 9

*Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*,
No. 1:10-CV-03029-JEC, 2011 WL 13217738 (N.D. Ga. Dec. 13, 2011) ............ 14

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
No. 15-CV-2926 (DRH)(SIL), 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020)....... 12

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
794 F.Supp.2d 602 (D. Md. 2011)......................................................................... 9

*Composite Marine Propellers, Inc. v. Van Der Woude*,
962 F.2d 1263 (7th Cir. 1992) ............................................................................. 13

*Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*,
369 A.2d 566 (Md. 1977) ..................................................................................... 15

*Flexpand, LLC v. CREAM, Inc.*,
No. C 19-0878 SBA, 2020 WL 13504975 (N.D. Cal. Sept. 9, 2020) .................... 14

*Glenn v. Wells Fargo Bank, N.A.*,
No. CV DKC 15-3058, 2016 WL 3570274 (D. Md. July 1, 2016) .................... 9, 14

*Goss v. Bank of Am., N.A.*,
917 F.Supp.2d 445 (D. Md. 2013).......................................................................... 8

*KEMA, Inc. v. Koperwhats*,
658 F.Supp.2d 1022 (N.D. Cal. 2009) .................................................................. 12

*Lambeth v. Bd. of Comm'rs of Davidson Cnty.*,
407 F.3d 266 (4th Cir. 2005) ................................................................................. 8

*LTVN Holdings, LLC v. Odeh*,
No. CIV.A.CCB-09-789, 2010 WL 2612690 (D. Md. June 25, 2010) ................... 17

*Madison River Mgt. Co. v. Bus. Mgt. Software Corp.*,
    351 F.Supp.2d 436 (M.D.N.C. 2005) ............................................................ 17

*Metro. Regl. Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    948 F.Supp.2d 538 (D. Md. 2013) .............................................................. 13

*Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*,
    No. CV1508762RGKGJSX, 2015 WL 12860491 (C.D. Cal. Dec. 14, 2015).......................... 12

*PaySys Int'l, Inc. v. Atos Se*,
    No. 14-CV-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016)................................ 12

*Philips v. Pitt Cnty. Mem. Hosp.*,
    572 F.3d 176 (4th Cir. 2009) .............................................................. 6, 9

*Resnick v. City of Troy*,
    No. 2:17CV815-ECM, 2019 WL 2092567 (M.D. Ala. May 13, 2019) ................................ 14

*RRC N.E., LLC v. BAA Maryland, Inc.*,
    994 A.2d 430 (Md. 2010) .................................................................. 15

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    No. 3:16-CV-545, 2018 WL 1796293 (E.D. Va. Apr. 16, 2018) .................................. 13

*Trandes Corp. v. Guy F. Atkinson Co.*,
    996 F.2d 655 (4th Cir. 1993) .............................................................. 13

*U.S. ex. rel Berge v. Bd. Trustees Univ. Ala.*,
    104 F.3d 1453 (4th Cir. 1997) ........................................................ 17, 18

*United Black Firefighters v. Hirst*,
    604 F.2d 844 (4th Cir. 1979) ............................................................... 8

*View Point Med. Sys., LLC v. Athena Health, Inc.*,
    9 F.Supp.3d 588 (D. Md. 2014) .......................................................... 6, 9

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) ............................................................... 8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ............................................................ 7, 9

**Statutes**

17 U.S.C. § 101 ............................................................................. 13

17 U.S.C. § 102 ............................................................................. 17

17 U.S.C. § 103 ............................................................................. 17

17 U.S.C. § 106 .................................................................................................................. 17

17 U.S.C. § 301 .................................................................................................................. 17

17 U.S.C. § 408 .................................................................................................................. 11

17 U.S.C. § 410 .................................................................................................................. 11

17 U.S.C. § 705 .............................................................................................................. 11, 12

18 U.S.C. § 1836 ............................................................................................................. 8, 11

18 U.S.C. § 1839 ................................................................................................................ 11

MD. Code, Com. Law § 11-1201 ...................................................................................... 8, 11

Defendant J.F. Taylor, Inc. ("J.F. Taylor") submits the following Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff JET Systems, LLC's ("JET") Complaint (Dkt. No. 1) (the "Complaint" or "Compl.") Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## I.    INTRODUCTION

JET's Complaint is no more than an improper effort to gain through litigation what JET failed to earn through proper contract performance.  The allegations in JET's Complaint are based on two unfounded positions.   For its claims of copyright infringement, trade secret misappropriation, and conversion, JET asserts "upon information and belief" that there were some purported unauthorized copies made by J.F. Taylor between the time JET provided its software to the United States Government (the "Government") and when the software was returned to JET. Compl. ¶ 28.   JET's Complaint and associated materials, however, make this allegation unsupportable.  The agreement at the center of the Complaint is Purchase Order No. 309975 (the "Purchase Order") between J.F. Taylor and JET.  The Purchase Order specifically authorized the right to review and evaluate JET's software: "[J.F. Taylor and the Government] reserve[] the right to inspect or test any supplies or services that have been tendered for acceptance."  Dkt. No. 1-6, Ex. D to Compl. at 2.  JET's allegations rest on J.F. Taylor's exercise of this contractual right: "before returning the software, upon information and belief . . . [J.F. Taylor] and the Government made unauthorized copies in violation of JET's registered copyright in the software and constituting misappropriation of trade secrets and conversion." Compl. ¶ 28.  Because any copying of JET's software was explicitly authorized under the Purchase Agreement, JET's claims have no basis in law.  JET cannot ignore the terms of the Purchase Order and offer up its own conclusory statements in their stead.

JET's breach of contract claim also fails.  This claim rests on JET's belief, offered in in conclusory fashion, that it fully performed under the operative agreements, and J.F. Taylor,

therefore, breached the agreements by not paying JET.  Compl. ¶ 67.  JET's conclusory statements cannot change what the Complaint and associated materials make plain: JET's software did not meet the contractual obligations set forth in Purchase Order.  According to JET's Complaint, after an evaluation of JET's software took place, the Government, via J.F. Taylor, informed JET of the deficiencies of its software and gave JET time to address the shortfalls.  Compl. ¶ 24.  In response, JET refused to resolve the defects, and pursuant to the Purchase Order, J.F. Taylor notified JET that the Purchase Order would be terminated for cause.  Dkt. No. 1-11, Ex. I to Compl.; Dkt. No. 1-12, Ex. J to Compl. ("JET has repeatedly stated its refusal and inability to cure" the deficiencies of JET's software.).  Because JET never cured the deficiencies, despite repeated requests to do so, J.F. Taylor properly terminated the Purchase Order for cause.  Dkt. No. 1-12, Ex. J. to Compl.

Given all of this, JET's claims cannot survive this Motion on multiple grounds.

**First**, Section 1 of the Purchase Order, titled "Inspection/Acceptance," provides for the right "to inspect or test any supplies or services that have been tendered for acceptance."  Dkt. No. 1-6, Ex. D to Compl. at 2.  As such, by agreement, J.F. Taylor was entitled to inspect or test JET's Software "before returning" it to JET.  Compl. ¶ 28.  JET's copyright infringement, trade secret misappropriation, and conversion claims, therefore, cannot survive this Motion.

**Second**, to the extent JET's software contains any alleged trade secrets, JET, through its own actions, has extinguished those rights by publishing the complete and unredacted software through its registration of the software with the U.S. Copyright Office.

**Third**, JET's single, conclusory "upon information and belief" allegation that forms the sole foundation for JET's copyright infringement, trade secret misappropriation, and conversion claims is legally flawed under Federal Rules of Civil Procedure 8 and 12(b)(6) and *Bell Atl. Corp.*

2

*v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and cannot survive a Rule 12(b)(6) motion to dismiss.

**Fourth**, JET's breach of contract claim should also be dismissed.  This claim is not supported, as required, by well-pled facts but instead asserts only conclusory, unsupported statements.  Furthermore, no merit can be given to JET's conclusory statements underpinning its breach of contract claim, as JET's own Complaint and associated materials directly contradict those conclusory assertions.  JET cannot offer narrative in its Complaint in an effort to rewrite what actually happened.

**Fifth**, and lastly, JET's conversion claim against J.F. Taylor should be dismissed, because the Copyright Act preempts JET's common law conversion claim.

As detailed below, JET's claims against J.F. Taylor all fail, and the alleged facts set forth in the Complaint are insufficient to support those claims.  The Court should grant J.F. Taylor's Motion to Dismiss.

## II.    BACKGROUND

J.F. Taylor designs, engineers, and manufactures products and solutions for the Government.  At issue in this case is one such project under which the Government engaged and contracted J.F. Taylor to design, develop, build, and test prototype computers for the PMA209 Mission Computer Adjust Processor ("MCAP") Program.  Dkt. No. 1-3, Ex. A to Compl. at 2. One of the goals of this project was for J.F. Taylor to "explore the potential integration of reusable software products" into the Government's systems.  *Id*.  At the direction of the Government, J.F. Taylor contacted JET in August of 2022 to request a quote for JET's software, as "reusable software products . . . ."  *Id*.  In order to accomplish the "reusable" aspect of the software, J.F. Taylor's request required that any such software must include "build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable)."  *Id*.

Anticipating that the Government would need to inspect and approve JET's software prior to payment, J.F. Taylor explicitly stated in its request that "Government approval will be required in order to facilitate payment." *Id.* at 3. These conditions were reiterated in correspondence dated August 5, 2022 from J.F. Taylor to JET. Dkt. No. 1-18, Ex. P to Compl.

JET responded to J.F. Taylor's request by providing a quote for JET's software. Dkt. No. 1-4, Ex. B to Compl. Acknowledging the requirements as to the reusability of the software, JET stated that its software would include "build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable)." *Id.*

J.F. Taylor then issued the Purchase Order to JET. Dkt. No. 1-5, Ex. C to Compl. The Purchase Order stated that J.F. Taylor's standard terms and conditions apply. *Id.* JET attached J.F. Taylor's standard terms and conditions to the Complaint. *See* Dkt. No. 1-6, Ex. D to Compl. Sections 1 and 13 are relevant to the claims at issue in this case. Section 1 of the terms and conductions, titled "Inspection/Acceptance" states:

> The seller shall only tender for acceptance those items that conform to the requirements of this order. The buyer reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The buyer may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The buyer must exercise its post-acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.
>
> The U.S. Government may engage in the same inspection activities as J.F. Taylor, Inc.

*Id.* at 2. Section 13, titled "Termination for Cause" states:

> The buyer may terminate this contract, or any part hereof, for cause in the event of any default by the seller, or if the seller fails to comply with any order terms and conditions, or fails to provide the buyer, upon request, with adequate assurances of future performance. In the event of termination for cause, the buyer shall not be liable to the seller for any amount for supplies or services not accepted, and the seller shall be liable to the buyer for any and all rights and remedies provided by

law.  If it is determined that the buyer improperly terminated this order for default, such termination shall be deemed a termination for convenience.

*Id.* at 5.  JET's Complaint does not address or mention either of these Sections of the Purchase Order.

On or about September 22, 2022, JET delivered its software directly to the Government. Compl. ¶ 19; Dkt. No. 1-7, Ex. E to Compl. at 2-3.  Subsequently and after exercising its rights under the Purchase Order to inspect JET's software, the Government requested J.F. Taylor contact JET to explain that JET's software was lacking certain key components that would enable the software to be reusable, mainly the "ALF Core and [Software Development Kit]."  Dkt. No. 1-8, Ex. F to Compl.  J.F. Taylor did so on September 27, 2022.  *Id.*  The next day, a software lead for the Government emailed JET directly, outlining the deficiencies in JET's software.  Dkt. No. 1-15, Ex. M to Compl.  On October 18, 2022, Mr. Scott Jaster, CEO and Chief Engineer for JET, contacted a team member of the PMA209 project to discuss JET's software delivery to the Government.  Compl. ¶ 22.  JET alleges Exhibit G represents a text message conversation between Mr. Jaster and the PMA209 team member.  *Id.*; *see* Dkt. No. 1-9, Ex. G to Compl.  In that conversation, Mr. Jaster admits that the software delivered to the Government was deficient because, as delivered, the software was "still in [its] infancy and needs time and effort to grow . . . ."  Dkt. No. 1-9, Ex. G to Compl. at 2.

After notifying JET of the deficiencies of JET's software, the Government outlined the deficiencies in a Letter of Concern, dated November 10, 2022, to J.F. Taylor.  *See* Dkt. No. 1-10, Ex. H to Compl.  J.F. Taylor transmitted the Letter of Concern to JET on November 14, 2022. Dkt. No. 1-11, Ex. I to Compl.  In addition to transmitting the Government's Letter of Concern, J.F. Taylor's November 14, 2022 letter notified JET that it had until November 23, 2022 to cure the deficiencies in JET's software, and that if JET failed to cure such deficiencies, J.F. Taylor

would terminate the Purchase Order for cause.  *Id.*  After discussions between J.F. Taylor and JET

regarding the deficiencies of JET's software, during which JET "repeatedly stated its refusal and

inability to cure" (Dkt. No. 1-12, Ex. J to Compl.), on December 9, 2022, J.F. Taylor notified JET

that the Purchase Order was terminated for cause pursuant to Section 13 of J.F. Taylor's standard

terms and conditions, indicating that the termination was "a result of JET's failure to perform and

breaches of warranty, as addressed in . . . prior communications including the November 14, 2022

Notice of Breach and December 2, 2022 Show Cause Notice."[1]  *See* Dkt. No. 1-12, Ex. J to Compl.

Subsequent communication from JET to J.F. Taylor failed to resolve the deficiencies of

JET's software.  Instead, JET attempted improperly to shift the blame for its own failures to J.F.

Taylor by asserting J.F. Taylor was somehow responsible for the deficiencies of JET's software

and that the "best course of action" for J.F. Taylor to avoid liability was to "work with JET to help

obtain government acceptance."  Dkt. No. 1-14, Ex. L to Compl. at 4.

Pursuant to the rights under the Purchase Order, the Government returned JET's software

to J.F. Taylor on February 22, 2023.  The Government returned JET's software in a sealed

envelope.  *See* Dkt. No. 1-17, Ex. O to Compl.  J.F. Taylor mailed the sealed envelope directly to

JET on February 24, 2023, and JET received its software on February 27, 2023.  Compl. ¶ 28.

---

[1] Although it was referenced, JET did not attach the December 2, 2022 Show of Cause Notice to
its Complaint.  J.F. Taylor has attached a true and correct copy of the Show Cause Notice as
Exhibit 1 to the Declaration of Lyndsay A. Gorton filed concurrently with the Motion and this
Memorandum in Support ("Gorton Declaration") at ¶ 2.  Exhibit 1 is integral to the Complaint and
authentic because the document is referenced by JET in its Complaint.  *See* Dkt. No. 1-12, Ex. J
to Compl. ("as addressed in our prior communications including the November 14, 2022 Notice
of Breach and December 2, 2022 Show Cause Notice").  As such, the Court may consider Exhibit 1
when determining a Rule 12(b)(6) motion.  *See View Point Med. Sys., LLC v. Athena Health, Inc*.,
9 F.Supp.3d 588, 598 (D. Md. 2014) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180
(4th Cir. 2009)).

In preparing to file this lawsuit, JET took at least two affirmative actions with respect to its software that are relevant here. First, as set out in the Complaint, on April 25, 2024, JET filed an application for a copyright registration for JET's software. *See* Compl. ¶ 27; *see also* Gorton Declaration Ex. 2, TX 9-384-065 Full Record. When registering its software with the Copyright Office, JET took no steps to protect any alleged trade secrets in the software. *See* Gorton Declaration Exs. 2 and 3, Copy of the Deposition of Copyright Registration No. TX 9-384-065.[2] Second, in that application, JET stated that the date of "publication" of its software was August 8, 2022, more than five months before JET alleges (wrongly) that J.F. Taylor copied JET's software. *Id.*

Furthermore, in October 2023, JET filed a complaint with the Office of the National Ombudsman, U.S. Small Business Administration (the "National Ombudsman"). Dkt. No. 1-17, Ex. O to Compl. The National Ombudsman confirmed that the Purchase Order between J.F. Taylor and JET had been terminated and that when returning JET's software, the Government "placed [JET's] software in a sealed envelope and provided it to [J.F. Taylor] for return to JET." *Id.*

## III.   ARGUMENT

JET asserts five claims against J.F. Taylor. Count I alleges infringement of JET's registered copyright, TX 9-384-065; Count II alleges misappropriation of trade secrets in JET's software products and documentation under the Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*; Count III alleges common law conversion under Maryland law; Count IV alleges

---

[2] Exhibit 2 is a true and accurate copy of the full record of JET's copyright registration no. TX 9-384-065. Gorton Decl. at ¶ 3. Exhibit 3 is a true and accurate copy of the deposit JET provided to the Copyright Office when applying for the registration of copyright registration no. TX-384-065. Gorton Decl. at ¶ 4. Both exhibits are "integral to the complaint and authentic" (*see View Point*, 9 F.Supp.3d at 598) because JET's copyright claim is based on JET's registered copyright. Additionally, the Court may take judicial notice of Exhibit 2 and Exhibit 3 because the accuracy of the record and copy cannot be reasonably disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

misappropriation of trade secrets in JET's software products and documentation under the Maryland Uniform Trade Secrets Act ("MUSTA"), MD. Code, Com. Law §§ 11-1201 *et seq.*; and Count V alleges breach of contract under Maryland law.  Compl. Counts I-V.

Even construing the facts in the light most favorable to JET, the claims against J.F. Taylor are legally unsupportable and should be dismissed under Rule 12(b)(6).

### A.     Standard of Review

On a Rule 12(b)(6) motion to dismiss, only "well-pleaded facts" are taken as true.  *Iqbal*, 556 U.S. at 679.  A complaint cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id.* at 678 (citing *Bell Atl.*, 550 U.S. at 570). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555.  Though the plaintiff does not have to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  *See Goss v. Bank of Am., N.A.*, 917 F.Supp.2d 445, 449 (D. Md. 2013) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)).

In general, when considering a Rule 12(b)(6) motion to dismiss, a court must construe the factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005), but a court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  A court also is not obligated to accept legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Using "upon information and belief" as a pleading device survives a motion to dismiss only "where the belief is based on factual information that makes the inference of culpability

plausible." *Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274, at *9 (D. Md. July 1, 2016).  A plaintiff "may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'"  *Id.*; *see also Twombly*, 550 U.S. at 551, 557 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).

When deciding the issues presented in a Rule 12(b)(6) motion, it is proper for a court to consider what is attached to the complaint and documents attached to a motion to dismiss when "they are integral to the complaint and authentic." *View Point*, 9 F.Supp.3d at 598 (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  A document integral to the complaint is one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'"  *View Point*, 9 F.Supp.3d. at 598 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011)) (emphasis in original). Courts may also consider "documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action" when deciding a motion to dismiss.  *Id.* (citing *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 749-50 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).

On judicial notice, the Fourth Circuit has explained that "courts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Zak*, 780 F.3d at 607 (internal marks omitted).

**B.    JET Has Not Alleged Any Plausible Violations in the Complaint to Survive this Motion to Dismiss**

      1.    <u>JET's Allegation that Copies of its Software were Improperly Made Must Be Dismissed as the Making of Such Copies is Legally Permissible Under the Purchase Order</u>

JET's allegation that J.F. Taylor improperly "made . . . copies" of JET's software cannot substantiate the copyright, trade secret misappropriation, and conversion claims.  Compl. ¶ 28.  The Purchase Order expressly authorizes the making of such copies, eliminating these claims.  The standard terms and conditions of Section 1 of the Purchase Order set out the right to inspect or test the software provided by JET:[3]

**1. Inspection/Acceptance**

The seller shall only tender for acceptance those items that conform to the requirements of this order.  **The buyer reserves the right to inspect or test any supplies or services that have been tendered for acceptance.**  The buyer may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price.  The buyer must exercise its post-acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

The U.S. Government may engage in the same inspection activities as J.F. Taylor, Inc.

Dkt. No. 1-6, Ex. D to Compl. at 2 (emphasis added).  As such, JET's allegation that improper copies were made fail as a matter of law.  *See, e.g.*, Compl. ¶ 28; Dkt. No. 1-10, Ex. H to Compl.; Dkt. No. 1-15, Ex. M to Compl.; Gorton Declaration Ex. 1, Show Cause Letter.

JET's position on Section 1: ignore it.  The Complaint offers no explanation as to why the inspection of JET's software or any copying that was alleged to have been performed was not authorized through Section 1 of the Purchase Order.  Section 1 cannot be ignored, and JET's

---

[3] JET does not dispute that J.F. Taylor's standard terms and conditions apply to the Purchase Order.  *See* Compl. ¶ 13.

conclusory allegation to the contrary cannot change Section 1's legal import.  JET's claims of copyright infringement, trade secret misappropriation, and conversion must, therefore, be dismissed.

> 2.    Plaintiff's Trade Secret Claims Fail as a Matter of Law

JET asserts two trade secret misappropriation claims.  Count II alleges misappropriation of trade secrets in JET's software products and documentation under the DTSA, 18 U.S.C. §§ 1836 *et seq.*, and Count IV under the MUSTA, MD. Code, Com. Law §§ 11-1201 *et seq*.  Compl. Counts II and IV.   For the additional, independent reasons outlined below, JET's trade secret misappropriation claims should be dismissed.

> a.    JET's Deposit of Its Software at the Copyright Office Made the Software Readily Ascertainable, Vitiating Trade Secret Protection

The MUSTA and DTSA dictate that trade secret protection does not attach to information that is "readily ascertainable."  Md. Code, Comm. Law § 11-1201(e); 18 U.S.C. § 1839(3).  In its Complaint, JET takes the position that all of its trade secrets are contained in its copyrighted software.  Compl. ¶ 42.  JET's publication of its software through its registration of its copyright, however, made the entirety of that software "readily ascertainable" to the public, thereby eliminating any purported trade secret rights in the software.  *See* 17 U.S.C. § 705(b).  As such, JET has no trade secrets to assert against J.F. Taylor.

The Copyright Office's full record of JET's copyright registration is attached as Gorton Declaration Exhibit 2.  Copyright registration of software, like other works, requires that a copy or other "identifying material" be deposited in the Copyright Office.  17 U.S.C. §§ 408(b)-(c)(1). The purpose of the deposit requirement is to ensure that the Register of Copyrights can determine whether "the material deposited constitutes copyrightable subject matter."  *Id.* at § 410(a).  By statute, deposits submitted to the Copyright Office "shall be open to public inspection."  *Id.* at

§ 705(b).  The entirety of JET's software was filed with the Copyright Office as a deposit.  That deposit is publicly available and accessible.  *See* Gorton Declaration Ex. 3, Copy of the Deposit of Copyright Registration No. TX 9-384-065; *see also* Compl. ¶¶ 27 ("JET has registered its copyright in the software code for its proprietary Adaptive Layer Framework software . . . ."), 42 ("Plaintiff has registered its copyright in the software code for its proprietary ALF software.").

Although the Copyright Office maintains procedures by which an applicant may submit its application for copyright registration under a trade secret designation by requesting special relief from the Copyright Office (*see* 37 C.F.R. § 202.20(c)(2)(vii)), JET did not avail itself of these procedures.   *See* Gorton Declaration Ex. 2, TX 9-384-065 Full Record (no indication that application requested trade secret designation).  Where a deposit is not filed under a trade secret designation, trade secret protection is lost.  *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *8 (S.D.N.Y. Dec. 5, 2016) ("The Copyright Office has specific procedures to protect trade secrets . . . . Such procedures provide redactions, *inter alia*, in order to protect trade secret material. . . . Failure to abide by such procedures—by, for instance, depositing copies without redaction—renders the deposited material publicly accessible and vitiates a trade secret claim.") (citations omitted); *see also Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926 (DRH)(SIL), 2020 WL 1242616, at *9 (E.D.N.Y. Mar. 16, 2020) ("The deposit of [source code] without redaction vitiates a trade secret claim."); *KEMA, Inc. v. Koperwhats*, 658 F.Supp.2d 1022, 1030-31 (N.D. Cal. 2009) (finding failure to file under trade secret designation fatal to trade secret claim); *Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*, No. CV1508762RGKGJSX, 2015 WL 12860491, at *5 (C.D. Cal. Dec. 14, 2015).  As such, given JET's affirmative acts, no trade secret protection can attach to its registered software, and JET's trade secret claims must therefore be dismissed.

Further, the TX 9-384-065 Full Record states that the "Publication Date" of JET's software was August 8, 2022. Gorton Declaration Ex. 2. "Publication" is defined in the Copyright Act as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. "The legislative history and reports of the 1976 Copyright Act 'define "to the public" as distribution to persons under no explicit or implicit restrictions with respect to disclosure of the contents.'" *Metro. Regl. Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F.Supp.2d 538, 559 (D. Md. 2013).

    b.  JET Fails to Identify Its Trade Secrets with Sufficient Particularity

JET alleges that "[JET's] software products and documentation are trade secrets." Compl. ¶¶ 49, 61. JET's claim that the entirety of its software products and documentation are trade secrets is an overbroad assertion that fails to pass muster as a matter of law. Both the MUTSA and DTSA require JET to identify, with specificity, the information it claims to be a trade secret. "It is axiomatic that a plaintiff asserting a misappropriation of trade secrets claim must identify the alleged trade secrets with sufficient precision." *Albert S. Smyth Co., Inc. v. Motes*, No. CV CCB-17-677, 2020 WL 4471524, at *3 (D. Md. Aug. 3, 2020); *see Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (in the context of a MUTSA claim, a plaintiff must identify, with particularity, each trade secret it claims the defendant misappropriated); *accord Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 1796293, at *7 (E.D. Va. Apr. 16, 2018) (applying the *Trandes* particularity requirement to a DTSA claim and citing cases); *see also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) ("It is not enough to point to broad areas . . . and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets."). Beyond showing that information "could qualify as trade secrets," a plaintiff still must "produc[e] *some* evidence that [the information] me[ets] the definition of a trade secret." *See Trandes*, 996 F.2d at 661 (emphasis in

original).  JET's failure to identify what portions of its software and documentation contains its alleged trade secrets necessarily requires that its trade secret misappropriation claims be dismissed.

3. The Claims Based on JET's Single, Unsupported "Upon Information and Belief" Allegation Cannot Survive a Motion to Dismiss

JET's claims that rest on JET's single, unsupported conclusion alleged in the Complaint— "before returning the software, upon information and belief, . . . [J.F. Taylor] . . . made unauthorized copies in violation of JET's registered copyright in the software and constituting misappropriation of trade secrets and conversion" (which include JET's copyright infringement, trade secret misappropriation, and conversion claims) cannot survive this Motion.  *See* Compl. ¶ 28, Counts I-IV.

As the law well-recognizes, JET is not entitled to "rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'"  *See Glenn*, 2016 WL 3570274, at *9, *see also Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504975, at *7 (N.D. Cal. Sept. 9, 2020).  JET's claims of copyright infringement, trade secret misappropriation, and conversion, therefore, should be dismissed.  *Flexpand*, 2020 WL 13504975, at *7 ("CREAM alleges no facts to support its barebones accusation that Flexpand and Martinez accessed its computer system without authorization.  The Court thus finds that CREAM has failed to sufficiently allege that Flexpand improperly acquired any of CREAM's trade secrets."); *Resnick v. City of Troy*, No. 2:17CV815-ECM, 2019 WL 2092567, at *6 (M.D. Ala. May 13, 2019) ("The Plaintiffs' assertion based on 'information and belief' without any supporting facts is simply insufficient to support a claim that any actions by the Defendants occurred after the effective date of the DTSA."); *Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. 1:10-CV-03029-JEC, 2011 WL 13217738, at *3 (N.D. Ga. Dec. 13, 2011) (granting defendant's motion to dismiss, noting

"plaintiff's thin allegation that defendant, upon information and belief, copied its software by servicing plaintiff's products").

    4.    <u>JET's Breach of Contract Claim Should Be Dismissed Because the Complaint Fails to Allege Sufficient Facts to Establish that the JET Software Met the Contractual Obligations</u>

"It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *RRC N.E., LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 440 (Md. 2010) (emphasis in original) (quoting *Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)). "[S]keletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of a contractual duty do not suffice to establish . . . [a] claim." *Cont'l Masonry*, 369 A.2d at 569.

JET's breach of contract claim is premised on the improper conclusion that JET's software met the requirements of the Purchase Order. Other than conclusory statements, such as "JET delivered precisely that which it was to deliver" and "JET has complied with the contract documents" (Compl. ¶¶ 74, 82), the Complaint fails to refute the fact that JET's software was deficient—a fact established by statements made by JET itself and the Exhibits attached to the Complaint. *See, e.g.*, Dkt. No. 1-19, Ex. G to Compl. at 2 (Mr. Jaster stating to the Government that JET's software, as delivered, was "still in [its] infancy and needs time and effort to grow . . . "); Dkt. No. 1-10, Ex. H to Compl. (letter from the Government to JET regarding the deficiencies of JET's software); Dkt. No. 1-15, Ex. M to Compl. (email from the Government to JET regarding the deficiencies of JET's software). Exhibits H and M make plain that JET's software had numerous deficiencies—deficiencies that the Government identified and communicated to JET on multiple occasions:

- "[T]he Government has determined that the delivered software and associated artifacts do not constitute a complete baseline software framework." Dkt. No. 1-10, Ex. H to Compl. at 2.

- "Per review of the delivered software product and documentation, the Government has determined that the delivered baseline ALF is missing major components in order to complete the framework, namely the Software Development Kit (SDK) with associated documentation, ALF Apps, ALF Core Architectural Design Document (ADD), complete system specifications, and supporting documents including User, Troubleshooting, and Installation Guides." *Id.*

- "Throughout the ALF delivery, the documentation references both the ALF CORE ADD and ALF SDK ADD. From this description and from what was delivered, the Government has determined that the following are missing: ALF CORE, ALF SDK, ALF Apps with the associated documentation including ADDs, Software Design Documents, and both User and Integration Guides." *Id.*

- "[The Government is] currently experiencing an issue connecting the [User Interface Application ('UIA')] to the ALF software running on the SBC." Dkt. No. 1-15, Ex. M to Compl.

- "When entering [the Government's] SBC's IP Address to connect to inside the UIA it displays a message showing the UIA is listening for a connection, but never receives data from the SBC." *Id.*

- "[The Government] was wondering if you could answer a few questions to help us resolve this issue. [The Government] will send the questions to JET via DoD SAFE . . . ." *Id.*

16

When referencing Exhibit H, the Complaint does not substantively address JET's performance under the agreement or the deficiencies outlined in the letter but instead, categorizes the entire document as one that "falsely claim[s] . . . the delivered software was incomplete . . . ." Compl. ¶ 23.  With respect to Exhibit M, the Complaint fails to even acknowledge that the communication identified critical issues with JET's software, and instead uses the Exhibit as evidence that the Government copied JET's software.  Compl. ¶¶ 31, 35.  As stated above in Section B.1 and what cannot be disputed, when the Government inspected JET's software, it was exercising its right and authority to do so pursuant to the inspection right of Section 1 of the Purchase Order.  JET's allegation that the Government improperly copied JET's software, therefore, is meritless.

JET's breach of contract claim cannot survive based on these unsupported and improper conclusions and JET's failure to address the deficiencies of its software identified throughout the Complaint.  As such, JET's breach of contract claim should be dismissed.

5.    The Copyright Act Preempts Plaintiff's Conversion Claim

The Copyright Act preempts JET's common law conversion claim.  *See* 17 U.S.C. § 301(a); *U.S. ex. rel Berge v. Bd. Trustees Univ. Ala.*, 104 F.3d 1453, 1463-64 (4th Cir. 1997); *see, e.g.*, *LTVN Holdings, LLC v. Odeh*, No. CIV.A.CCB-09-789, 2010 WL 2612690, at *6 (D. Md. June 25, 2010) (holding a conversion claim preempted by the Copyright Act where the claim alleged that the defendants took the videos from the plaintiffs' possession without permission); *Madison River Mgt. Co. v. Bus. Mgt. Software Corp.*, 351 F.Supp.2d 436, 444-45 (M.D.N.C. 2005) (holding a conversion claim preempted by the Copyright Act where the claim involved the unauthorized use of an intangible software program).  For preemption to apply, a two-prong test must be met: (1) the work must be "within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103"; and (2) the "rights granted under state law must be equivalent to any exclusive rights within

the scope of federal copyright as set out in 17 U.S.C. § 106." *Bd. Trustees Univ. Ala.*, 104 F.3d at 1463 (internal quotation marks omitted).  A conversion claim is preempted "where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work." *Id.*

Applying the above standard, it is clear that the Copyright Act preempts JET's common law conversion claim.  Here, JET's work—its software—falls within the scope of the subject-matter of copyright.[4]  Compl. ¶ 27.  JET alleges that J.F. Taylor converted its software "[b]y obtaining and using [Plaintiff's] proprietary software without its permission." *Id.* at ¶ 58.  This claim does not allege that J.F. Taylor converted any physical object.  Instead, the alleged obtaining and using relate to JET's software, which the Complaint confirms was returned to JET. *Id.* at ¶ 28 (J.F. Taylor "return[ed] the software . . . .").  Accordingly, JET's claim for conversion is preempted by the Copyright Act and should be dismissed.

## IV.    REQUEST FOR ORAL HEARING

Pursuant to Local Rule 105.6, J.F. Taylor respectfully requests a hearing on its Motion to Dismiss.

## V.    CONCLUSION

For the above reasons, the Court should grant J.F. Taylor's Motion to Dismiss.

---

[4] For purposes of this Motion only, it is assumed that JET's copyright is within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103 and that JET's copyright registration was proper under the U.S. Copyright Act.

Dated:  July 31, 2024

Respectfully Submitted,

/s/ *Lyndsay A. Gorton*

Lyndsay A. Gorton, Bar No. 19457
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
LGorton@crowell.com

Paul Keller (*Pro Hac Vice*)
James Reed (*Pro Hac Vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 443-4000
Fax: (202) 628-5116
PKeller@crowell.com
JReed@crowell.com

*Counsel for Defendant J.F. Taylor, Inc.*