**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **JET SYSTEMS, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Civil Action No. 8:24-cv-1628-DKC** |
| | ) |
| **J.F. TAYLOR, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**DEFENDANT J.F. TAYLOR, INC.'S MEMORANDUM IN SUPPORT OF**</u>
<u>**ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

I.     Introduction ................................................................................................................ 1

II.    Background .............................................................................................................. 3

III.   Argument .................................................................................................................. 7

      A.     Standard of Review ........................................................................................... 7

      B.     JET Has Not Alleged Any Plausible Violations in the First
           Amended Complaint to Survive this Motion to Dismiss ........................................ 9

           1.     JET's Claims Should Be Dismissed Because the Clear and
                Unambiguous Language of the Purchase Order Makes Acceptance
                of JET's Software Conditioned on Inspection ............................................ 9

           2.     Plaintiff's Trade Secret Claims Fail as a Matter of Law .......................... 11

           3.     The Claims Based on JET's Single, Unsupported "Upon
                Information and Belief" Allegation Cannot Survive a Motion to
                Dismiss ................................................................................................. 16

           4.     The Copyright Act Preempts Plaintiff's Conversion Claim .................... 17

      C.     The First Amended Complaint Should be Dismissed with Prejudice
           Because Further Amendment is Futile ................................................................ 18

      D.     The First Amended Complaint is an Improper Shotgun Pleading ....................... 19

IV.    Request for Oral Hearing ........................................................................................ 21

V.     Conclusion .............................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Albert S. Smyth Co., Inc. v. Motes*,
No. CV CCB-17-677, 2020 WL 4471524 (D. Md. Aug. 3, 2020) ..................................... 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 2, 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 2, 8

*Biospherics, Inc. v. Forbes, Inc.*,
989 F.Supp. 748 (D.Md. 1997)....................................................................................... 9

*Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*,
No. 1:10-CV-03029-JEC, 2011 WL 13217738 (N.D. Ga. Dec. 13, 2011) ............................ 16

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
No. 15-CV-2926 (DRH)(SIL), 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020)....................... 15

*Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*,
761 F.2d 970, (4th Cir. 1985) ...................................................................................... 18

*Chacko v. Preston*,
No. 23cv551, 2024 WL 943455,  (E.D. Va. Mar. 5, 2024) ................................................ 18

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
794 F.Supp.2d 602 (D. Md. 2011)................................................................................... 9

*Composite Marine Propellers, Inc. v. Van Der Woude*,
962 F.2d 1263 (7th Cir. 1992) ..................................................................................... 12

*Flexpand, LLC v. CREAM, Inc.*,
No. C 19-0878 SBA, 2020 WL 13504975 (N.D. Cal. Sept. 9, 2020) .................................. 16

*Foman v. Davis*,
371 U.S. 178 (1962).................................................................................................... 18

*Glaser v. Enzo Biochem, Inc.*,
126 Fed. App'x 593 (4th Cir. 2005) .............................................................................. 18

*Glenn v. Wells Fargo Bank, N.A.*,
No. CV DKC 15-3058, 2016 WL 3570274 (D. Md. July 1, 2016) .................................. 8, 16

*Goss v. Bank of Am., N.A.*,
917 F.Supp.2d 445 (D. Md. 2013)................................................................................... 8

*Howes v. SN Servicing Corp.*,
   No. CCB-20-670, 2021 WL 878354, (D. Md. Mar. 9, 2021) .................................................. 20

*Jackson v. Olsen*, No.
   09-cv-43, 2010 WL 724023, (E.D. Va. Mar. 1, 2010) ............................................................ 20

*Jackson v. Warning*,
   No. CV PJM 15-1233, 2016 WL 7228866, (D. Md. Dec. 13, 2016).......................................... 20

*KEMA, Inc. v. Koperwhats*,
   658 F.Supp.2d 1022 (N.D. Cal. 2009) .................................................................................... 15

*Lambeth v. Bd. of Comm'rs of Davidson Cnty.*,
   407 F.3d 266 (4th Cir. 2005) ..................................................................................................... 8

*Lee v. Meyers*,
   No. ELH-21-1589, 2022 WL 252960 (D. Md. Jan. 27, 2022) ................................................. 20

*LTVN Holdings, LLC v. Odeh*,
   No. CIV.A.CCB-09-789, 2010 WL 2612690 (D. Md. June 25, 2010) .................................... 17

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*,
   351 F.Supp.2d 436 (M.D.N.C. 2005) ..................................................................................... 17

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   948 F.Supp.2d 538 (D. Md. 2013)........................................................................................... 15

*Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*,
   No. CV1508762RGKGJSX, 2015 WL 12860491 (C.D. Cal. Dec. 14, 2015)......................... 15

*PaySys Int'l, Inc. v. Atos Se*,
   No. 14-CV-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016)................................. 15

*Philips v. Pitt Cnty. Mem. Hosp.*,
   572 F.3d 176 (4th Cir. 2009) ................................................................................................ 6, 9

*Resnick v. City of Troy*,
   No. 2:17CV815-ECM, 2019 WL 2092567 (M.D. Ala. May 13, 2019) ................................... 16

*Sewraz v. Morchower*,
   No. 08-cv-100, 2009 WL 211578 (E.D. Va. Jan. 28, 2009).................................................... 20

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
   No. 3:16-CV-545, 2018 WL 1796293 (E.D. Va. Apr. 16, 2018) ............................................ 12

*TECH USA, Inc. v. Milligan*,
   No. CV RDB-20-0310, 2021 WL 795151 (D. Md. Mar. 1, 2021) .......................................... 14

*Trandes Corp. v. Guy F. Atkinson Co.*,
    996 F.2d 655 (4th Cir. 1993) ........................................................................... 12

*U.S. ex. rel Berge v. Bd. Trustees Univ. Ala.*,
    104 F.3d 1453 (4th Cir. 1997) ......................................................................... 17

*United Black Firefighters v. Hirst*,
    604 F.2d 844 (4th Cir. 1979) ............................................................................. 8

*View Point Med. Sys., LLC v. Athena Health, Inc.*,
    9 F.Supp.3d 588 (D. Md. 2014) ................................................................. 6, 8, 9

*Virella v. M.B.G. Enters. Inc.*,
    No. CV RDB-21-1844, 2022 WL 36452, (D. Md. Jan. 4, 2022) ......................... 18

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) ............................................................................. 8

*Weigel v. Maryland*,
    950 F.Supp.2d 811, (D. Md. 2013) ................................................................. 18

*Weiland v. Palm Beach Cty. Sheriff's Off.*,
    792 F.3d 1313, (11th Cir. 2015) ....................................................................... 20

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) .......................................................................... 7, 9

**Statutes**

17 U.S.C. § 101 ................................................................................................... 13

17 U.S.C. § 102 ................................................................................................... 17

17 U.S.C. § 103 ................................................................................................... 17

17 U.S.C. § 106 ................................................................................................... 17

17 U.S.C. § 301 ................................................................................................... 17

17 U.S.C. § 408 ................................................................................................... 11

17 U.S.C. § 410 ................................................................................................... 11

17 U.S.C. § 705 .............................................................................................. 11, 12

18 U.S.C. 1836 ............................................................................................... 8, 11

18 U.S.C. 1839 ................................................................................................... 11

MD. Code, Com. Law § 11-1201 .............................................................................. 8, 11

Defendant J.F. Taylor, Inc. ("J.F. Taylor") submits the following Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff JET Systems, LLC's ("JET") First Amended Complaint (Dkt. No. 19) ("First Amended Complaint" or "FAC") pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## I.    INTRODUCTION

As with its initial Complaint, JET's First Amended Complaint is no more than an improper effort to gain through litigation what JET cannot gain through contract.  As a matter of law, JET's claims cannot stand given the clear and unambiguous language of the governing agreement, Purchase Order No. 309975 (the "Purchase Order"), between J.F. Taylor and JET.  Dkt. No. 1-6, Ex. D to JET's Original Complaint (the "Original Complaint" or "Compl.").[1]  JET's citation to certain provisions of the Purchase Order to support its claims cannot remove the other provisions of the Purchase Order that wipe those claims away.  For all of JET's bluster that it supposedly provided the software requested under the agreement, the Purchase Order specifically provides for the right to review the software and the right not to accept it:  "[J.F. Taylor and the Government] reserve[] the right to inspect or test any supplies or services that have been tendered for acceptance."  "The buyer reserves the right to inspect or test any supplies or services that have been tendered for acceptance."  *Id.* at 2.  Nothing in the agreement requires the United States Government (the "Government") or J.F. Taylor to accept the software proffered by JET.  If the software was "accepted" then the other provision of the agreement would come into force.  Before that, however, the inspection and acceptance of the software remains with the Government and J.F. Taylor.  This "right to inspect" vitiates all of JET's claims in this action—the claims of breach

---

[1] For the First Amended Complaint, JET did not file the exhibits attached to its Original Complaint but instead cited to the docket.  For purposes of responding to the allegations set forth in the First Amended Complaint, J.F. Taylor will rely on the exhibits attached to JET's Original Complaint by citing to the docket.

of contract, copyright infringement, misappropriation of trade secret, and conversions—all of which are premised on the use of the software during the inspection period called for under the Purchase Order.

JET's other claims fare no better. For example, JET's trade secret misappropriation claims fail as a matter of law because JET failed to identify and sufficiently plead that its "software products and documentation" constitute trade secrets and were misappropriated.[2]

Furthermore, JET's single, conclusory "upon information and belief" allegation that forms the sole foundation for JET's copyright infringement, trade secret misappropriation, and conversion claims is legally flawed under Federal Rules of Civil Procedure 8 and 12(b)(6) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and cannot survive a Rule 12(b)(6) motion to dismiss.

JET's conversion claim against J.F. Taylor should also be dismissed, because the Copyright Act preempts JET's common law conversion claim.

Further, given the clarity of the governing agreement and because JET has now had an opportunity to try and rectify the deficiencies in its Initial Complaint, the First Amended Complaint should be dismissed with prejudice as further amendment is futile.

Lastly, JET's First Amended Complaint also fails to provide adequate notice of JET's claims against J.F. Taylor, as the First Amended Complaint is nothing more than an improper shotgun pleading.

---

[2] As discussed below in Section III.B.2.c, for the additional reason that JET deposited a portion of its software with the Copyright Office, any claim of trade secret misappropriation of that portion of software should be dismissed, as that portion cannot have trade secret protection.

As detailed below, JET's claims against J.F. Taylor all fail, and the alleged facts set forth in the First Amended Complaint are insufficient to support those claims. The Court should grant J.F. Taylor's Motion to Dismiss.

## II.    BACKGROUND

J.F. Taylor designs, engineers, and manufactures products and solutions for the Government. At issue in this case is one such project under which the Government engaged and contracted J.F. Taylor to design, develop, build, and test prototype computers for the PMA209 Mission Computer Adjust Processor ("MCAP") Program. Dkt. No. 1-3, Ex. A to Compl. at 2. One of the goals of this project was for J.F. Taylor to "explore the potential integration of reusable software products" into the Government's systems. *Id*. At the direction of the Government, J.F. Taylor contacted JET in August of 2022 to request a quote for JET's software, as "reusable software products . . . ." *Id*. In order to accomplish the "reusable" aspect of the software, J.F. Taylor's request required that any such software must include "build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable)." *Id*. Anticipating that the Government would need to inspect and approve JET's software prior to payment, J.F. Taylor explicitly stated in its request that "Government approval will be required in order to facilitate payment." *Id*. at 3. These conditions were reiterated in correspondence dated August 5, 2022 from J.F. Taylor to JET. Dkt. No. 1-18, Ex. P to Compl.

JET responded to J.F. Taylor's request by providing a quote for JET's software. Dkt. No. 1-4, Ex. B to Compl. Acknowledging the requirements as to the reusability of the software, JET stated that its software would include "build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable)." *Id*.

J.F. Taylor then issued the Purchase Order to JET. Dkt. No. 1-5, Ex. C to Compl. The Purchase Order stated that J.F. Taylor's standard terms and conditions apply. *Id*. JET attached

J.F. Taylor's standard terms and conditions to the Initial Complaint. *See* Dkt. No. 1-6, Ex. D to

Compl. Sections 1 and 13 are relevant to the claims at issue in this case. Section 1 of the terms

and conductions, titled "Inspection/Acceptance" states:

> The seller shall only tender for acceptance those items that conform to the
> requirements of this order. The buyer reserves the right to inspect or test any
> supplies or services that have been tendered for acceptance. The buyer may require
> repair or replacement of nonconforming supplies or reperformance of
> nonconforming services at no increase in contract price. The buyer must exercise
> its post-acceptance rights (1) within a reasonable time after the defect was
> discovered or should have been discovered and (2) before any substantial change
> occurs in the condition of the item, unless the change is due to the defect in the
> item.
>
> The U.S. Government may engage in the same inspection activities as J.F. Taylor,
> Inc.

*Id.* at 2. Section 13, titled "Termination for Cause" states:

> The buyer may terminate this contract, or any part hereof, for cause in the event of
> any default by the seller, or if the seller fails to comply with any order terms and
> conditions, or fails to provide the buyer, upon request, with adequate assurances of
> future performance. In the event of termination for cause, the buyer shall not be
> liable to the seller for any amount for supplies or services not accepted, and the
> seller shall be liable to the buyer for any and all rights and remedies provided by
> law. If it is determined that the buyer improperly terminated this order for default,
> such termination shall be deemed a termination for convenience.

*Id*. at 5. JET's First Amended Complaint does not address or mention either of these Sections of

the Purchase Order.

On or about September 22, 2022, JET delivered its software directly to the Government.

FAC ¶ 23; Dkt. No. 1-7, Ex. E to Compl. at 2-3. Subsequently and after exercising its rights under

the Purchase Order to inspect JET's software, the Government requested J.F. Taylor contact JET

to explain that JET's software was lacking certain key components that would enable the software

to be reusable, mainly the "ALF Core and [Software Development Kit]." Dkt. No. 1-8, Ex. F to

Compl. J.F. Taylor did so on September 27, 2022. *Id.* The next day, a software lead for the

Government emailed JET directly, outlining the deficiencies in JET's software. Dkt. No. 1-15,

Ex. M to Compl.  On October 18, 2022, Mr. Scott Jaster, CEO and Chief Engineer for JET, contacted a team member of the PMA209 project to discuss JET's software delivery to the Government.  FAC ¶ 28.  JET alleges Exhibit G to the Initial Complaint represents a text message conversation between Mr. Jaster and the PMA209 team member.  *Id.*; *see also* Dkt. No. 1-9, Ex. G to Compl.  In that conversation, Mr. Jaster admits that the software delivered to the Government was deficient because, as delivered, the software was "still in [its] infancy and needs time and effort to grow . . . ."  Dkt. No. 1-9, Ex. G to Compl.  at 2.

After notifying JET of the deficiencies of JET's software, the Government outlined the deficiencies in a Letter of Concern, dated November 10, 2022, to J.F. Taylor.  *See* Dkt. No. 1-10, Ex. H to Compl.  J.F. Taylor transmitted the Letter of Concern to JET on November 14, 2022.  Dkt. No. 1-11, Ex. I to Compl.  In addition to transmitting the Government's Letter of Concern, J.F. Taylor's November 14, 2022 letter notified JET that it had until November 23, 2022 to cure the deficiencies in JET's software, and that if JET failed to cure such deficiencies, J.F. Taylor would terminate the Purchase Order for cause.  *Id.*  After discussions between J.F. Taylor and JET regarding the deficiencies of JET's software, during which JET "repeatedly stated its refusal and inability to cure" (Dkt. No. 1-12, Ex. J to Compl.), on December 9, 2022, J.F. Taylor notified JET that the Purchase Order was terminated for cause pursuant to Section 13 of J.F. Taylor's standard terms and conditions, indicating that the termination was "a result of JET's failure to perform and breaches of warranty, as addressed in . . . prior communications including the November 14, 2022 Notice of Breach and December 2, 2022 Show Cause Notice."[3]  *See* Dkt. No. 1-12, Ex. J to Compl.

_____

[3] Although it was referenced, JET did not attach the December 2, 2022 Show Cause Notice to its Original Complaint.  J.F. Taylor has attached a true and correct copy of the Show Cause Notice as Exhibit 1 to the Renewed Declaration of Lyndsay A. Gorton filed concurrently with this Motion and this Memorandum in Support ("Renewed Gorton Declaration" or "Gorton Decl.") at ¶ 2.  Exhibit 1 is integral to the Original Complaint and First Amended Complaint and authentic

Subsequent communication from JET to J.F. Taylor failed to resolve the deficiencies of JET's software. Instead, JET attempted improperly to shift the blame for its own failures to J.F. Taylor by asserting J.F. Taylor was somehow responsible for the deficiencies of JET's software and that the "best course of action" for J.F. Taylor to avoid liability was to "work with JET to help obtain government acceptance." Dkt. No. 1-14, Ex. L to Compl. at 4.

Pursuant to the pre-acceptance rights under the Purchase Order, the Government returned JET's software to J.F. Taylor on February 22, 2023. The Government returned JET's software in a sealed envelope. *See* Dkt. No. 1-17, Ex. O to Compl. J.F. Taylor mailed the sealed envelope directly to JET on February 24, 2023, and JET received its software on February 27, 2023. FAC ¶ 35.

In preparing to file this lawsuit, JET took at least two affirmative actions with respect to its software that are relevant here. First, as set out in the First Amended Complaint, on April 25, 2024, JET filed an application for a copyright registration for JET's software. *See* FAC ¶ 33; *see also* Gorton Decl. Ex. 2, TX 9-384-065 Full Record. When registering its software with the Copyright Office, JET did not request special relief from the Copyright Office to protect any alleged trade secret information contained in the deposited portion of software. *See* Gorton Decl. Exs. 2 and 3, Copy of the Deposit of Copyright Registration No. TX 9-384-065.[4] Second, in that

---

because the document is referenced by JET in its Complaint. *See* Dkt. No. 1-12, Ex. J to Compl. ("as addressed in our prior communications including the November 14, 2022 Notice of Breach and December 2, 2022 Show Cause Notice"). As such, the Court may consider Exhibit 1 when determining a Rule 12(b)(6) motion. *See View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F.Supp.3d 588, 598 (D. Md. 2014) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

[4] Exhibit 2 is a true and accurate copy of the full record of JET's copyright registration no. TX 9-384-065. 2d Gorton Decl. at ¶ 3. Exhibit 3 is a true and accurate copy of the deposit JET provided to the Copyright Office when applying for the registration of copyright registration no. TX-384-065. Gorton Decl. at ¶ 4. Both exhibits are "integral to the complaint and authentic" (*see View Point*, 9 F.Supp.3d at 598) because JET's copyright claim is based on JET's registered copyright.

application, JET stated that the date of "publication" of its software was August 8, 2022, more than

five months before JET alleges (wrongly) that J.F. Taylor copied JET's software.  *Id.*

Furthermore, in October 2023, JET filed a complaint with the Office of the National

Ombudsman, U.S. Small Business Administration (the "National Ombudsman").  Dkt. No. 1-17,

Ex. O to Compl.  The National Ombudsman confirmed that the Purchase Order between J.F. Taylor

and JET had been terminated and that when returning JET's software, the Government "placed

[JET's] software in a sealed envelope and provided it to [J.F. Taylor] for return to JET."  *Id.*

### III.   ARGUMENT

JET asserts five claims against J.F. Taylor.   Count I alleges infringement of JET's

registered copyright, TX 9-384-065; Count II alleges misappropriation of trade secrets in JET's

software products and documentation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C.

§§ 1836 *et seq.*; Count III alleges common law conversion under Maryland law; Count IV alleges

misappropriation of trade secrets in JET's software products and documentation under the

Maryland Uniform Trade Secrets Act ("MUTSA"), MD. Code, Com. Law §§ 11-1201 *et seq.*; and

Count V alleges breach of contract under Maryland law.  FAC Counts I-V.

Even construing the facts in the light most favorable to JET, the claims against J.F. Taylor

are legally unsupportable and should be dismissed under Rule 12(b)(6).

### A.   Standard of Review

On a Rule 12(b)(6) motion to dismiss, only "well-pleaded facts" are taken as true.  *Iqbal*,

556 U.S. at 679.  A complaint cannot rely on "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements . . . ."  *Id.* at 678 (citing *Twombly*, 550 U.S. at

---

Additionally, the Court may take judicial notice of Exhibit 2 and Exhibit 3 because the accuracy
of the record and copy cannot be reasonably disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597, 607 (4th Cir. 2015).

570).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Though the plaintiff does not have to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  *See Goss v. Bank of Am., N.A.*, 917 F.Supp.2d 445, 449 (D. Md. 2013) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)).

In general, when considering a Rule 12(b)(6) motion to dismiss, a court must construe the factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005), but a court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  A court also is not obligated to accept legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Using "upon information and belief" as a pleading device survives a motion to dismiss only "where the belief is based on factual information that makes the inference of culpability plausible."  *Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274, at *9 (D. Md. July 1, 2016).  A plaintiff "may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'"  *Id.*; *see also Twombly*, 550 U.S. at 551, 557 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).

When deciding the issues presented in a Rule 12(b)(6) motion, it is proper for a court to consider what is attached to the complaint and documents attached to a motion to dismiss when "they are integral to the complaint and authentic."  *View Point*, 9 F.Supp.3d at 598 (quoting *Philips*

*v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document integral to the complaint is one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *View Point*, 9 F.Supp.3d at 598 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011)) (emphasis in original). Courts may also consider "documents which are referred to in the complaint and upon which Plaintiff relies in bringing the action" when deciding a motion to dismiss. *Id.* (citing *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 749-50 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).

On judicial notice, the Fourth Circuit has explained that "courts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Zak*, 780 F.3d at 607 (internal marks omitted).

**B.    JET Has Not Alleged Any Plausible Violations in the First Amended Complaint to Survive this Motion to Dismiss**

1.    JET's Claims Should Be Dismissed Because the Clear and Unambiguous Language of the Purchase Order Makes Acceptance of JET's Software Conditioned on Inspection

JET's breach of contract claim is premised on the assertion that JET "fulfilled all conditions precedent" under the Purchase Order and is therefore entitled to "relative performance by [J.F. Taylor]." FAC ¶ 79. JET's remaining claims of copyright, trade secret misappropriation, and conversion are all based on alleged copying performed by J.F. Taylor after it received JET's software from the Government but before J.F. Taylor returned the software to JET. *Id.* ¶¶ 34, 35. Each of these claims, however, fail as a matter of law because each claim ignores the clear

9

language of the Purchase Agreement that provides the Government and J.F. Taylor an opportunity to inspect any items before accepting such items:[5]

### 1. Inspection/Acceptance

The seller shall only tender for acceptance those items that conform to the requirements of this order. **The buyer reserves the right to inspect or test any supplies or services that have been tendered for acceptance.** The buyer may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The buyer must exercise its post-acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

The U.S. Government may engage in the same inspection activities as J.F. Taylor, Inc.

Dkt. No. 1-6, Ex. D to Compl. at 2 (emphasis added). Inspection before acceptance is precisely what occurred: JET provided its software to the Government for acceptance. FAC ¶ 23. The Government inspected the software and, pursuant to its rights under the agreement, exercised its right not to accept the software and returned it. Dkt. No. 1-17, Ex. O to Compl.

The First Amended Complaint provides no allegation that J.F. Taylor was required to accept JET's software simply because JET provided it to J.F. Taylor. Instead, the First Amended Complaint makes clear that J.F. Taylor and the Government had "the right to inspect" prior to accepting any tendered item. Dkt. No. 1-6, Ex. D to Compl. Further, JET's allegation that improper copies were made fails as a matter of law, as any such copies would have been made pursuant to J.F. Taylor's "right to inspect." FAC ¶ 35; Dkt. No. 1-10, Ex. H to Compl.; Dkt. No. 1-15, Ex. M to Compl.; Gorton Decl. Ex. 1, Show Cause Letter. As such, all of JET's claims should be dismissed on this reason alone.

---

[5] JET does not dispute that J.F. Taylor's standard terms and conditions apply to the Purchase Order. *See* FAC ¶ 16.

JET's position on Section 1's inspection right:  ignore it.  The First Amended Complaint offers no explanation as to why the inspection of JET's software was not authorized through Section 1 of the Purchase Order.  Section 1 cannot be ignored, and JET's conclusory allegation to the contrary cannot change Section 1's legal import.  JET's claims of copyright infringement, trade secret misappropriation, and conversion must, therefore, be dismissed.

2.  <u>Plaintiff's Trade Secret Claims Fail as a Matter of Law</u>

JET asserts two trade secret misappropriation claims.  Count II alleges misappropriation of trade secrets under the DTSA, 18 U.S.C. §§ 1836 *et seq.*, and Count IV under the MUTSA, MD. Code, Com. Law §§ 11-1201 *et seq.*  FAC Counts II and IV.  To establish misappropriation of a trade secret under federal law and Maryland state law, JET must demonstrate that its software products and documentation are trade secrets and that those trade secrets were misappropriated. *See* 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); Md. Code Ann., Com. Law § 11-201(c).  Under both the MUTSA and DTSA, a plaintiff is required to identify, with specificity, the information it claims to be a trade secret.  *Albert S. Smyth Co., Inc. v. Motes*, No. CV CCB-17-677, 2020 WL 4471524, at *3 (D. Md. Aug. 3, 2020).

Here, JET's threadbare statements contained in the First Amended Complaint do not state a plausible claim under the DTSA or MUTSA because (1) the vague and broad assertion that its "software products and documentation are trade secrets" fails to sufficiently plead that this information constitutes trade secrets; and (2) beyond merely reciting the statutory definition of misappropriation, JET provides no factual allegations concerning any improper acquisition, alleged use, or disclosure of JET's "software products and documentation."[6]

---

[6] The reason JET cannot make this allegation is because J.F. Taylor never accessed or copied JET's software; therefore, did not acquire, disclose, or use JET's software.

Lastly, any claims of trade secret misappropriation as to the portion of JET's software deposited with the Copyright Office must be dismissed, as publicly depositing that portion of code vitiates any trade secret protection.

a.    <u>JET Fails to Identify Its Trade Secrets with Sufficient Particularity;
Therefore, Fails to Allege the Existence of Any Trade Secrets</u>

JET alleges that "[JET's] software products and documentation are trade secrets." FAC ¶¶ 57, 69. JET's overbroad assertion, however, fails to pass muster under a motion to dismiss as a matter of law. Both the MUTSA and DTSA require JET to identify, with specificity, the information it claims to be a trade secret. "It is axiomatic that a plaintiff asserting a misappropriation of trade secrets claim must identify the alleged trade secrets with sufficient precision." *Albert S. Smyth Co.*, 2020 WL 4471524, at *3; *see Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (in the context of a MUTSA claim, a plaintiff must identify, with particularity, each trade secret it claims the defendant misappropriated); *accord Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 1796293, at *7 (E.D. Va. Apr. 16, 2018) (applying the *Trandes* particularity requirement to a DTSA claim and citing cases); *see also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) ("It is not enough to point to broad areas . . . and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets.").

Beyond showing that information "could qualify as trade secrets," a plaintiff still must "produc[e] *some* evidence that [the information] me[ets] the definition of a trade secret." *See Trandes*, 996 F.2d at 661 (emphasis in original). Here, JET has provided no factual allegations to support its conclusion that the "software products and documentation" are trade secrets; instead, JET provides conclusory statements that merely mimic the statutory definition of what constitutes a trade secret, interjected with legal conclusions such as "JET has taken reasonable measures to

keep [the alleged trade secrets] secret;" "[J.F. Taylor] can obtain economic value from the disclosure or use of [the alleged trade secrets]." *See* FAC ¶ 57. JET, however, provides no factual support explaining what or when any purported reasonable measures were taken or how these purported trade secrets have any economic value driven by their supposed secrecy. JET's allegations for asserting its software products and documentation are entitled to trade secret protection under the MUTSA has even less support, as JET merely states its "software products and documentation are trade secrets as defined in Md. Commercial Code, § 11-1201(e)" and then proceeds to recite portions of the statute.

JET's failure (again) to define the contours of those supposed rights requires that its trade secret misappropriation claims be dismissed.

> b. <u>JET Fails to Plausibly Allege Misappropriation of Any Trade Secrets</u>

Assuming JET's software products and documentation are entitled protection under the DTSA or MUTSA, the First Amended Complaint fails to plausibly allege any misappropriation of such information.

First, as stated above in Section III.B.1, any alleged use of JET's software by J.F. Taylor was in fact authorized by the Purchase Order. For this reason alone, JET's assertion of misappropriation fails.

Second, JET's allegations cannot support its claims of misappropriation sufficient to survive a motion to dismiss. Like above with respect to identifying and pleading the existence of trade secrets, JET provides no factual assertions as to any alleged improper acquisition, disclosure, or use of the alleged trade secrets. FAC ¶¶ 59, 70. Instead, JET again provides legal conclusions by asserting without factual allegations that "[J.F. Taylor] misappropriated Plaintiff's proprietary ALF software and products and documentation" followed by the respective definitions of

misappropriation.  *Id.*  JET does not identify or explain how J.F. Taylor improperly acquired or used such alleged trade secrets or to whom J.F. Taylor allegedly disclosed them.  These bare accusations do not sufficiently allege or meet the necessary elements of the claim that J.F. Taylor misappropriated a trade secret under either the DTSA or MUTSA.  *See TECH USA, Inc. v. Milligan*, No. CV RDB-20-0310, 2021 WL 795151, at *7 (D. Md. Mar. 1, 2021) (dismissing plaintiff's trade secret misappropriation claim because the "bare allegation" that defendant disclosed alleged trade secrets was "insufficient to state a plausible claim"); *see also id.* at *5 ("This Court has clearly held that the mere ability to access a trade secret is not sufficient to constitute misappropriation under the DTSA.").

          c.    <u>JET's Deposit of a Portion of its Software at the Copyright Office Made that Portion Readily Ascertainable, Vitiating Trade Secret Protection</u>

The MUTSA and DTSA dictate that trade secret protection does not attach to information that is "readily ascertainable."  Md. Code, Com. Law § 11-1201(e); 18 U.S.C. § 1839(3).  JET's publication of a portion of its software through its registration of its copyright made that portion "readily ascertainable" to the public, thereby eliminating any purported trade secret rights in that portion.  *See* 17 U.S.C. § 705(b).

The Copyright Office's full record of JET's copyright registration is attached as Renewed Gorton Declaration Exhibit 2.  Copyright registration of software, like other works, requires that a copy or other "identifying material" be deposited in the Copyright Office.  17 U.S.C. §§ 408(b)-(c)(1).  The purpose of the deposit requirement is to ensure that the Register of Copyrights can determine whether "the material deposited constitutes copyrightable subject matter."  *Id.* at § 410(a).  By statute, deposits submitted to the Copyright Office "shall be open to public inspection."  *Id.* at § 705(b).  According to the First Amended Complaint, JET filed a portion of its software with the Copyright Office as a deposit.  That deposit is publicly available and accessible.  *See*

Gorton Decl. Ex. 3, Copy of the Deposit of Copyright Registration No. TX 9-384-065; *see also* FAC ¶¶ 33 ("JET has registered its copyright in the software code for its proprietary Adaptive Layer Framework software . . . ."), 49 ("Plaintiff has registered its copyright in the software code for its proprietary ALF software.").   Accordingly, the portion of the software that JET deposited with the Copyright Office does not contain trade secret information and cannot be misappropriated. *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at \*8 (S.D.N.Y. Dec. 5, 2016) ("The Copyright Office has specific procedures to protect trade secrets . . . . Such procedures provide redactions, *inter alia*, in order to protect trade secret material. . . . Failure to abide by such procedures—by, for instance, depositing copies without redaction—renders the deposited material publicly accessible and vitiates a trade secret claim.") (citations omitted); *see also Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926 (DRH)(SIL), 2020 WL 1242616, at \*9 (E.D.N.Y. Mar. 16, 2020) ("The deposit of [source code] without redaction vitiates a trade secret claim."); *KEMA, Inc. v. Koperwhats*, 658 F.Supp.2d 1022, 1030-31 (N.D. Cal. 2009) (finding failure to file under trade secret designation fatal to trade secret claim); *Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*, No. CV1508762RGKGJSX, 2015 WL 12860491, at \*5 (C.D. Cal. Dec. 14, 2015).

Further, the TX 9-384-065 Full Record states that the "Publication Date" of JET's software was August 8, 2022.  Gorton Decl. Ex. 2.  "Publication" is defined in the Copyright Act as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101.  "The legislative history and reports of the 1976 Copyright Act 'define "to the public" as distribution to persons under no explicit or implicit restrictions with respect to disclosure of the contents.'" *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F.Supp.2d 538, 559 (D. Md. 2013).

3.     The Claims Based on JET's Single, Unsupported "Upon Information and Belief" Allegation Cannot Survive a Motion to Dismiss

JET's claims of copyright infringement, trade secret misappropriation, and conversion rest on JET's single, unsupported conclusion alleged in the First Amended Complaint—that "before returning the software, upon information and belief, . . . [J.F. Taylor] . . . made unauthorized copies in violation of JET's registered copyright in the software and constituting misappropriation of trade secrets and conversion." *See* FAC ¶ 35, Counts I-IV.

As the law well-recognizes, JET is not entitled to "rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'" *See Glenn*, 2016 WL 3570274, at *9, *see also Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13504975, at *7 (N.D. Cal. Sept. 9, 2020).

JET's claims of copyright infringement, trade secret misappropriation, and conversion, therefore, should be dismissed. *Flexpand*, 2020 WL 13504975, at *7 ("CREAM alleges no facts to support its barebones accusation that Flexpand and Martinez accessed its computer system without authorization.  The Court thus finds that CREAM has failed to sufficiently allege that Flexpand improperly acquired any of CREAM's trade secrets."); *Resnick v. City of Troy*, No. 2:17CV815-ECM, 2019 WL 2092567, at *6 (M.D. Ala. May 13, 2019) ("The Plaintiffs' assertion based on 'information and belief' without any supporting facts is simply insufficient to support a claim that any actions by the Defendants occurred after the effective date of the DTSA."); *Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. 1:10-CV-03029-JEC, 2011 WL 13217738, at *3 (N.D. Ga. Dec. 13, 2011) (granting defendant's motion to dismiss, noting "plaintiff's thin allegation that defendant, upon information and belief, copied its software by servicing plaintiff's products").

4.    The Copyright Act Preempts Plaintiff's Conversion Claim

The Copyright Act preempts JET's common law conversion claim. *See* 17 U.S.C. § 301(a); *U.S. ex. rel Berge v. Bd. Trustees Univ. Ala.*, 104 F.3d 1453, 1463-64 (4th Cir. 1997); *see, e.g.*, *LTVN Holdings, LLC v. Odeh*, No. CIV.A.CCB-09-789, 2010 WL 2612690, at *6 (D. Md. June 25, 2010) (holding a conversion claim preempted by the Copyright Act where the claim alleged that the defendants took the videos from the plaintiffs' possession without permission); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F.Supp.2d 436, 444-45 (M.D.N.C. 2005) (holding a conversion claim preempted by the Copyright Act where the claim involved the unauthorized use of an intangible software program). For preemption to apply, a two-prong test must be met: (1) the work must be "within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103"; and (2) the "rights granted under state law must be equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Bd. Trustees Univ. Ala.*, 104 F.3d at 1463 (internal quotation marks omitted). A conversion claim is preempted "where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work." *Id.*

Applying the above standard, it is clear that the Copyright Act preempts JET's common law conversion claim. Here, JET's work—its software—falls within the scope of the subject-matter of copyright.[7] FAC ¶ 33. JET alleges that J.F. Taylor converted its software "[b]y obtaining and using the CDs containing [Plaintiff's] proprietary software without its permission." *Id.* at ¶ 66. This claim does not allege that J.F. Taylor converted any physical object. Instead, JET admits that J.F. Taylor returned the CDs that JET previously had given to the Government. *Id.* at ¶ 34.

---

[7] For purposes of this Motion only, it is assumed that JET's copyright is within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102 and 103 and that JET's copyright registration was proper under the U.S. Copyright Act.

17

Accordingly, JET's claim for conversion is preempted by the Copyright Act and should be dismissed.

### C.    The First Amended Complaint Should be Dismissed with Prejudice Because Further Amendment is Futile

JET's First Amended Complaint is a prime example of a complaint that should be dismissed with prejudice because any further amendment will not resolve the issues in the pleading.   Although Rule 15(a)(2) allows amendments to be freely granted when justice so requires, it is within the district court's discretion to dismiss a complaint with prejudice.  *Virella v. M.B.G. Enters. Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 n.3 (D. Md. Jan. 4, 2022) ("The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court."); *see also Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985) (same).  As is relevant here, leave to amend should be refused in situations of bad faith, dilatory motive, undue prejudice to a defendant, or futility of amendment.  *See Glaser v. Enzo Biochem, Inc.*, 126 Fed. App'x 593, (4th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[D]ismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim."  *Weigel v. Maryland*, 950 F.Supp.2d 811, 826 (D. Md. 2013); *see also Chacko v. Preston*, No. 23cv551, 2024 WL 943455, at *6 (E.D. Va. Mar. 5, 2024) ("When a court has confirmed that all the facts are before it and a court is satisfied that it is familiar with the entirety of the circumstances surrounding a plaintiff's demands, a court may refuse to grant leave to amend due to futility.").

Having now filed its complaint twice without meeting the necessary pleading requirements (and having the list of those deficiencies at hand), JET has made clear that it does not have the required information that would resolve the pleading deficiencies in the First Amended Complaint. Each and every Count in the First Amended Complaint is deficient under Rules 8 and 12(b)(6).

Yet, the vast majority of the additional allegations that JET included in the First Amended Complaint are not related to J.F. Taylor or J.F. Taylor's actions, but are allegations that the *Government* supposedly did. *See, e.g.*, FAC ¶¶ 9 ("The United States Navy ('USN') has a continuing interest in Plaintiff's Adaptive Layer Framework products"); 10 ("The inclusion of Plaintiff's ALF in the USN's CAMP 2020 as the primary software framework solution and the fact that money was obligated demonstrated a long-term intent for the USN to use Plaintiff's products"); 43 ("[the Government] was sufficiently aware of JET's Systems interest in protecting its proprietary intellectual property").

Therefore, dismissal with prejudice is appropriate considering the circumstances of this case. If there are facts that support any of JET's claims, JET knows them and should have included them in the First Amended Complaint. As there are no allegations pleaded to demonstrate any violations of law, it is a reasonable conclusion that no such facts exist. To the extent that the Court has questions about whether there are facts that exist—facts that JET did not include in its Initial Complaint or First Amended Complaint—JET will have the opportunity in a response to this Motion to tell the Court directly whether there are additional facts that JET could plead to plausibly allege any of the Counts in the First Amended Complaint.

In sum, any amendment would be futile, and the Complaint should be dismissed with prejudice.

### D.    The First Amended Complaint is an Improper Shotgun Pleading

JET's First Amended Complaint is an improper shotgun pleading, and should be dismissed for that independent reason as well. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Where a complaint instead includes extensive allegations that are not tied to specific theories of liability, but rather requires litigants to sift through the entire complaint in order to identify specific relevant

allegations, such complaints are improper shotgun pleadings that fail to notify defendants of claims against them.  *See Lee v. Meyers*, No. ELH-21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022); *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) ("A complaint which fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief constitutes a shotgun pleading.") (internal marks omitted)); *see also Sewraz v. Morchower*, No. 08-cv-100, 2009 WL 211578, at *1 (E.D. Va. Jan. 28, 2009); *Jackson v. Olsen*, No. 09-cv-43, 2010 WL 724023, at *6 n.5 (E.D. Va. Mar. 1, 2010).

The first allegation in each of the counts in the First Amended Complaint states, "Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-[XX]."  FAC ¶¶ 48, 56, 63, 68, 74.  This Court and others have determined that such incorporation of each allegation into the subsequent count renders a pleading an improper shotgun pleading.  *See, e.g.*, *Howes v. SN Servicing Corp.*, No. CCB-20-670, 2021 WL 878354, at *8 (D. Md. Mar. 9, 2021); *Sewraz*, 2009 WL 211578, at *1 ("The sixteen causes of action are all 'shotgun pleadings' by which each count incorporates by reference the allegations of its predecessors."); *see also Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("The most common type [of improper shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.").  Indeed, this Court has explained that complaints that incorporate by reference each allegation into each count are "arduous reading" and "in some respects the very definition of a shotgun pleading."  *Howes*, 2021 WL 878354, at *8.

The First Amended Complaint being an improper shotgun pleading denies J.F. Taylor adequate notice of JET's claims against it.  By incorporating each and every prior paragraph into each Count, JET has made it impossible for J.F. Taylor to determine what allegations are relevant to the purported trade secrets violations versus the common law conversion claim versus the breach of contract claim.  Count V, the alleged breach of contract count, is particularly egregious as it incorporates every single one of the preceding paragraphs, which include allegations consisting entirely of legal conclusions and allegations that have nothing to do with J.F. Taylor, let alone any supposed breach of contract, including, *inter alia*: "To prove a cause of action for copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) that the defendant copied the original elements of that copyrighted material.  *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991))[,]" FAC ¶ 53, and "On information and belief, Support Contract number N0042122R3013 was withdrawn from Secise/Precise Systems amid allegations of unethical behavior by Secise/Precise Systems[,]" *id*. ¶ 41.  This Court and J.F. Taylor should not be forced to parse through allegations to determine what purported facts apply to which count.

The Plaintiff's First Amended Complaint should be dismissed for this independent reason as well.[8]

## IV.    REQUEST FOR ORAL HEARING

Pursuant to Local Rule 105.6, J.F. Taylor respectfully requests a hearing on its Motion to Dismiss.

---

[8] J.F. Taylor requests that the Court dismiss JET's First Amended Complaint as an improper shotgun pleading that fails to satisfy Rule 8.  But, to the extent that the Court deems the appropriate remedy to be ordering Plaintiff to file a more definite statement of the claims under Rule 12(e), J.F. Taylor requests that relief in the alternative.

## V.    CONCLUSION

For the above reasons, the Court should grant J.F. Taylor's Motion to Dismiss.

Dated:  September 4, 2024                      Respectfully Submitted,

                                              */s/ Lyndsay A. Gorton*
                                              Lyndsay A. Gorton, Bar No. 19457
                                              CROWELL & MORING LLP
                                              1001 Pennsylvania Avenue, NW
                                              Washington, DC 20004
                                              Tel: (202) 624-2500
                                              Fax: (202) 628-5116
                                              LGorton@crowell.com

                                              Paul Keller (*Pro Hac Vice*)
                                              James Reed (*Pro Hac Vice*)
                                              CROWELL & MORING LLP
                                              Two Manhattan West
                                              375 Ninth Avenue
                                              New York, NY 10001
                                              Tel: (212) 443-4000
                                              Fax: (202) 628-5116
                                              PKeller@crowell.com
                                              JReed@crowell.com

                                              *Counsel for Defendant J.F. Taylor, Inc.*