IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JET SYSTEMS, LLC | : | |
| | : | |
| v. | : | Civil Action No. DKC 24-1628 |
| | : | |
| J.F. TAYLOR, INC. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this copyright infringement and breach of contract case are the motion to dismiss filed by Defendant J.F. Taylor, Inc. ("JFTI" or "Defendant"), (ECF No. 23), the motion to seal Exhibit 2 to the amended complaint filed by Plaintiff JET Systems, LLC ("JET" or "Plaintiff"), (ECF No. 24), and the motion to seal amicus brief by amicus United States of America, (ECF No. 32). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part, the motion to seal will be granted, and the motion to seal amicus brief will be denied.

## I. Background[1]

Plaintiff "develops, maintains, and innovates systems for specific and common mission capabilities, combat aides, and

---

[1] The following facts are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

surveillance systems." (ECF No. 19 ¶ 3). Plaintiff "provides solutions [to Government agencies] through cost-effective, tailored strategies to meet mission requirements to include both new software generation and certified software re-use." (*Id.*). The Government uses Plaintiff's services "to provide ongoing support activity or to prepare the customer to be a lead systems integrator." (*Id.*). Additionally, Plaintiff "has developed its proprietary Adaptive Layer Framework ('ALF') software products and documentation." (*Id.*). ALF is known by the United States Navy (the "Navy") and "throughout the industry to refer to Plaintiff's products." (*Id.* ¶ 9).

Plaintiff alleges that the Navy "has a continuing interest" in Plaintiff's ALF products. (*Id.*). The Navy "even wrote ALF into its Core Avionics Master Plan 2020 ('CAMP')."[2] (*Id.*). Plaintiff alleges that "[t]he inclusion of Plaintiff's ALF in the [Navy's] CAMP 2020 as the primary software framework solution and the fact that money was obligated demonstrated a long-term intent for the [Navy] to use Plaintiff's products." (*Id.* ¶ 10).

Defendant "specializes in delivering high-tech products and solutions to keep our military strong and our warfighters safe,"

_____

[2] Plaintiff alleges that, in the CAMP appendix, it says "2. Funded Enhancements and Potential Pursuits – 'Open Architecture Middleware Interface to Operational Flight Profile (OFP) – Adaptive Layer Framework (ALF) (2022)].'" (ECF No. 19 ¶ 9).

and has "40 years of experience as a design, engineering, and manufacturing company." (*Id.* ¶ 4). Defendant had a contract with the Navy "to design, develop, build, and test prototype computers for the NAVAIR PMA-209 Air Combat Electronics Program Office ('PMA-209')[3] Mission Computer Adjunct Processor ('MCAP') Program," and, as part of the contract, the Navy "asked JFTI to issue a purchase order to JET for JET's proprietary Baseline ALF software products and documentation." (*Id.* ¶ 11).

On August 1, 2022, Scott Jaster ("Mr. Jaster") from JET and Matt Campbell ("Mr. Campbell") from JFTI "discussed via email the precise extent of the contents of JET's proprietary Baseline ALF software products and documentation." (*Id.* ¶ 12). On August 5, 2022, Defendant issued a Request for Quotation ("RFQ"),[4] and on August 8, 2022, Plaintiff responded (the "Quotation").[5] (ECF Nos.

---

[3] Although Plaintiff does not explicitly define PMA-209, in its amended complaint, Plaintiff seemingly uses the term "PMA-209" interchangeably with "the Government" and "the Navy." For the purpose of these motions, the court will treat PMA-209 as the Government/Navy.

[4] Later in the amended complaint, in support of its breach of contract claim, Plaintiff quotes from the RFQ as follows: "All Baseline ALF Documentation/Deliverables is to be delivered with Government Purpose data rights. No integration support or training is required at this time. The Government requests physical delivery of software and documentation via CD or via DoD SAFE. Government approval will be required in order to facilitate payment." (ECF No. 19 ¶ 81).

[5] In support of its breach of contract claim, Plaintiff quotes from the Quotation as follows: "Baseline ALF Software, to include

19 ¶¶ 13-14; 1-3; 1-4).  Defendant accepted Plaintiff's bid and issued the purchase order, P.O. 309975 (the "Purchase Order"). (ECF Nos. 19 ¶ 15; 1-5).  The Purchase Order was issued pursuant to Defendant's Standard Terms and Conditions.  (ECF Nos. 19 ¶ 16; 1-6).  Included in the Standard Terms and Conditions was a paragraph that "summarize[d] the applicable DFARS/FAR Clauses for all procurements, included among which is DFARS 252.227-7014 (Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation)."  (ECF No. 19 ¶ 17).  Plaintiff alleges that this clause applies to the Purchase Order "because JET's proprietary Baseline ALF software products and documentation are not 'commercial computer software' and its documentation as defined in Sections (a)(1) and (5) of the DFARS."  (*Id.* ¶ 18).

JET further contends that: "As ALF is not 'commercial computer software' and is proprietary to JET, the entirety of ALF computer code is a trade secret.  JET makes reasonable efforts under all circumstances to maintain the secrecy of ALF software products." (*Id.* ¶ 19).  Plaintiff alleges that if the contract had gone forward, "the Government might have rights in the delivered software and the documentation pursuant to DFARS 252.227-

---

build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable).  All software is to be delivered with Government Purpose data rights.  Baseline ALF Documentation and all related Deliverables."  (*Id.* ¶ 83).

7014(b)(3)," but the contract ultimately did not go forward. (*Id.* ¶ 20).

Under the Purchase Order, delivery of the software and documentation was required on or before September 11, 2022. (*Id.* ¶ 21). Plaintiff alleges that "[t]he parties engaged in contemporaneous communications that assist the interpretation of the terms of the writings necessary to gauge the meeting of the minds present at the time of the formation of the contract." (*Id.* ¶ 22). Plaintiff alleges that the only contract between the parties is set out in the preceding facts and in the exhibits attached to the original complaint at ECF Nos. 1-3 (the Request for Quotation), 1-4 (the Quotation), 1-5 (the Purchase Order), and 1-6 (the Standard Terms and Conditions), and "[t]here [were] no other written agreements by and between JET and JFTI with regard to the legal defined deliverables as delineated in the Request for Quotation, Quote, and [the Purchase Order]." (*Id.*).

On or about September 9, 2022, Plaintiff "delivered a copy of its source code and documentation directly to the Government." (*Id.* ¶ 23). Mr. Jaster confirmed "the entirety of the Purchase Order Product Delivery" in an email to Mr. Campbell and copied Jeff Williamson of PMA-209 ("Mr. Williamson"). (*Id.* ¶ 23). On September 13, 2022, Mr. Campbell emailed Mr. Jaster "and confirmed that ALF Core and Software Development Kit ('SDK') 'were not listed

as deliverables on our current order.'  Mr. Campbell inquired if ALF Core and SDK could be added, and asked 'would there be additional cost?'  Several PMA-209 personnel were copied on the email."  (*Id.* ¶ 24).  On or about September 22, 2022, Kevin Pilkerton ("Mr. Pilkerton") of PMA-209/Multi-Use Laboratory Environment ("MULE") "signed for receipt of a DVD comprising ALF PowerPC 653 Supplemental Software."  (*Id.* ¶ 25).  On September 26, 2022, Mr. Pilkerton "signed for receipt of a DVD comprising ALF PowerPC 653 Test Cases."  (*Id.*).

On or about September 27, 2022, Mr. Campbell emailed Mr. Jaster a request from the Government to amend the Purchase Order to include products and services - "ALF Core, SDK, and support to MULE" - that were not included in the Purchase Order, in exchange for "a 50% payment for what [JET] ha[s] delivered so far."  (*Id.* ¶ 26).  Plaintiff alleges that because it had already met its obligations under the Purchase Order fully, it "did not accept the coercive offer from JFTI and the Government."  (*Id.*).  On September 28, 2022, Mr. Pilkerton announced via email "that the MULE team had successfully built the JET-delivered ALF software in VxWorks." (*Id.* ¶ 27).

On October 18, 2022, "while the Government was withholding payment" on the Purchase Order, Mr. Williamson texted Mr. Jaster that "I worked to get you 50% you did[n't] take it."  (*Id.* ¶ 28

6

(alteration in original)). Mr. Jaster explained that Plaintiff had met its obligations under the Purchase Order, and Mr. Williamson responded that "[i]t's out of my hands." (*Id.*). "On or about November 10, 2022, the Government sent a Letter of Concern to JFTI falsely claiming that the delivered software was incomplete and requesting a response by close of business on November 18, 2022, as to how JFTI intended to remedy the content of the deliverable." (*Id.* ¶ 29). On November 14, 2022, JFTI sent a letter to JET notifying JET that based on the Government's letter of concern, JFTI considered JET to be in breach of the Purchase Order. (*Id.* ¶ 30). JFTI provided JET until midday on November 23, 2022, "to complete performance and cure its alleged breach." (*Id.*).

"JET denied any breach and commenced negotiations, but JFTI failed to acknowledge that JET had complied with the terms and conditions of the [P]urchase [O]rder." (*Id.* ¶ 31). On December 9, 2022, JFTI informed JET that the Purchase Order was "terminated for cause." (*Id.*). JFTI did not make any payments to JET pursuant to the Purchase Order. (*Id.* ¶ 32). JET alleges that the Purchase Order was terminated wrongfully. (*Id.*).

JET alleges that it "has registered its copyright in the software code for its proprietary" ALF software, and the registration number is "TX 9-384-065." (*Id.* ¶ 33). JET further

alleges that after the Purchase Order was terminated, its
deliverables were not returned directly or promptly. (*Id.* ¶ 34).
Instead, over five months after the Navy had received the
deliverables, on or about February 27, 2023, JFTI returned a set
of CDs with the software and documentation that JET had sent
directly to the Navy. (*Id.*). A letter included in the envelope
indicated that the Navy had hand-delivered the CDs to JFTI on
February 21, 2023. (*Id.*).

JET alleges, upon information and belief, that before
returning the software, "JFTI and the Government made unauthorized
copies in violation of JET's registered copyright in the software
and constituting misappropriation of trade secrets and conversion
of the [CDs] containing the software source code." (*Id.* ¶ 35).

JET argues that it meets the information and belief pleading
standard because "the facts relating to [JFTI's] unauthorized
copying of the software code, misappropriation of trade secrets as
the code is a trade secret, and conversion of the [CD] are
peculiarly within the possession and control of [JFTI]." (*Id.*).
Additionally, JET alleges that "there is factual information that
makes the inference of liability for copyright infringement,
misappropriation of trade secrets, and conversion plausible."
(*Id.*). Specifically, JET alleges that on or about December 5,
2022, there was a telephone conference between Mr. Jaster of JET,

8

and Mr. Campbell, Wayne Taylor, Natalie Morris, and Tammy Sparks of JFTI. (*Id.* ¶ 36). On the call, "JFTI personnel admitted that they evaluated the ALF software that JET had delivered to the Government." (*Id.* ¶ 37). Additionally, as previously mentioned, on September 28, 2022, Mr. Pilkerton announced via email "that the MULE team had successfully built the JET delivered ALF software in VxWorks." (*Id.* ¶ 38). JET alleges that "[i]n order to accomplish this build, the PMA-209/MULE team necessarily copied the ALF software." (*Id.*). JET further alleges that:

> On information and belief, JFTI copied ALF software ostensibly under JFTI Prime Contract number N00421-22-9-0003, paragraph 2.4.1.10 Reusable Software Products: The Performer (JFTI) shall integrate ALF into the MCAP software environment during the modification phase, coordinating with the Government as needed during SETR events. The Performer (JFTI) shall deliver the updated ALF software, with Government Purpose Rights, using DI-IPSC-81488 as guidance (Deliverable D68).

(*Id.* ¶ 39).

Additionally, JET alleges that the Government, "in collaboration with JFTI also made the software and its documentation available to other parties, including Precise Systems." (*Id.* ¶ 40). JET alleges on information and belief that "PMA-209 awarded Support Contract number N0042122R3013 to Secise/Precise around January 10, 2024." (*Id.*). Seemingly to show this third-party's connection to the software, JET alleges

9

that "in the Statement of Work published by PMA-209, on June 15, 2023, the contract was to be awarded to a contractor having '[d]emonstrated experience with adaptive layer framework.'" (*Id.*). JET alleges upon information and belief that ultimately, "Support Contract number N0042122R3013 was withdrawn from Secise/Precise Systems amid allegations of unethical behavior by Secise/Precise Systems." (*Id.* ¶ 41).

JET further alleges that on September 28, 2022, Mr. Pilkerton of PMA-209 MULE sent an email to Peter Allen ("Mr. Allen") of JET, "explain[ing] that PMA-209/MULE had ALF products up and running in its lab, and [seeking] help from JET Systems to overcome the PMA-209/MULE lab's deficiencies." (*Id.* ¶ 42).

Additionally, JET alleges that PMA-209 was aware that JET had an "interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI," and therefore, "PMA-209 accepted delivery of ALF software directly from JET," instead of from JFTI. (*Id.* ¶ 43). Further, "PMA-209 instructed JFTI to amend the [Purchase Order] to include direct delivery of ALF Core and SDK to the Government." (*Id.* ¶ 44). Moreover, in text messages on September 6 to September 7, 2022, Mr. Williamson of PMA-209/MULE "acknowledged JET Systems' desire to avoid delivery of ALF software to or through JFTI." (*Id.* ¶ 46). Nevertheless, despite this awareness, the Government did not

return its copy directly to JET, and instead, the Government returned it to JFTI. (*Id.* ¶ 43).

In addition to the Government's awareness, JFTI had also given similar instructions to JET regarding the direct delivery of ALF to the Government. (*Id.* ¶ 45). On August 18, 2022, JFTI confirmed via email that JET would deliver ALF directly to the Government. (*Id.* ¶ 47).

On June 5, 2024, Plaintiff filed a complaint against Defendant. (ECF No. 1).[6]  On July 31, 2024, Defendant filed a motion to dismiss for failure to state a claim. (ECF No. 16).  On August 21, 2024, Plaintiff filed an amended complaint, alleging copyright infringement, violation of the Defend Trade Secrets Act, conversion, violation of the Maryland Uniform Trade Secrets Act, and breach of contract. (ECF No. 19).  Plaintiff asserts federal question jurisdiction over its copyright and trade secret claims and supplemental jurisdiction over the state law claims. (*Id.* ¶ 5).  The same day, Plaintiff filed a motion to seal Exhibit 1 of

---

[6] Plaintiff has filed multiple lawsuits related to the alleged copying of its software: two cases in this court, and a consolidated case in the United States Court of Federal Claims. Here, in addition to this case, JET filed *JET Systems, LLC v. United States of America*, No. 25-CV-1218-DKC, against the government, alleging a single claim for common law conversion under the Federal Tort Claims Act.  In the Court of Federal Claims, a consolidated action is pending against the United States in 24-1166 for infringement of copyright, contributory infringement, vicarious infringement, and breach of implied in fact contract.

its amended complaint. (ECF Nos. 20, 21, 22). On September 4, 2024, Defendant filed a motion to dismiss for failure to state a claim. (ECF No. 23). On September 5, 2024, Plaintiff filed a motion to seal Exhibit 2 to its amended complaint. (ECF No. 24). On September 6, 2024, the court denied Defendant's first motion to dismiss as moot. (ECF No. 25). On September 18, 2024, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (ECF No. 26). On September 26, 2024, the court granted Plaintiff's motion to seal Exhibit 1 of its amended complaint. (ECF No. 27). On October 2, 2024, Defendant filed a reply in support of its motion to dismiss. (ECF No. 28). On November 19, 2024, the United States of America filed an amicus brief in support of Plaintiff's motion to seal Exhibit 2 of its amended complaint, and on November 20, 2024, the United States filed a motion to seal its amicus brief. (ECF Nos. 30, 32).

## II.  Motion to Dismiss

### A.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir.

12

2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)).    A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).    A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299-300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

### B. Analysis

Plaintiff asserts five claims against Defendant: copyright infringement (Count I), violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.* (Count II), conversion (Count III), violation of the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law §§ 11-1202 to 11-1207 (Count IV), and breach of contract (Count V).    In its motion to dismiss,

Defendant argues that Plaintiff has failed to state a claim for each of these claims. (ECF No. 23, at 1).

### 1.    Information and Belief Pleading

"Under the pleading standard the Supreme Court of the United States articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" *Van Buren v. Walmart, Inc.*, 611 F.Supp.3d 30, 36 (D.Md. 2020) (quoting *Harman v. Unisys Corp.*, 356 F.App'x 638, 640–41 (4th Cir. 2009)), *aff'd*, 855 F.App'x 156 (4th Cir. 2021). Further,

> As Judge Grimm has noted, it is important to differentiate "between a case in which pleading 'upon information and belief' is used as an inadequate substitute for providing detail as to why the element is present in an action . . . [and the] proper use of 'upon information and belief,' where a plaintiff does not have personal knowledge of the facts being asserted." *Malibu Media*[*, LLC v. Doe*, No. 13-CV-365-PWG], 2014 WL 7188322, at *4 [(D.Md. Dec. 16, 2014)] (citations and internal quotation marks omitted). . . . "'[P]leading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F.App'x 11, 16 (2d Cir. 2013) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)).

*Id.* at 37 (first alteration in original).

Even if information is "particularly within defendants' knowledge and control," conclusory pleading is not permitted:

"Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff *but he has sufficient data to justify interposing an allegation on the subject*."  5 C. Wright & A. Miller, Federal Practice and Procedure § 1224 (4th ed.) (emphasis added).

As will be discussed below, Plaintiff's amended complaint relies far too heavily on "information and belief" without including sufficient substantive facts to support the information and beliefs alleged.

### 2.  Exhibits

Both parties rely on documents in support of their arguments. "As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)).  "However, 'the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Reamer*, 556 F.Supp.3d at 549).  "A document is integral to the complaint if its 'very

15

existence, and not the mere information it contains, gives rise to the legal rights asserted." *Id.* (citation modified) (quoting *Reamer*, 556 F.Supp.3d at 549).

Plaintiff attached multiple documents as exhibits to its initial complaint and its amended complaint, including the Request for Quotation, (ECF No. 1-3), the Quotation, (ECF No. 1-4), the Purchase Order, (ECF No. 1-5), and Defendant's Standard Terms and Conditions, (ECF No. 1-6). Therefore, the court may consider these documents.

Defendant attached several documents as exhibits to a declaration in support of its motion to dismiss, including the December 2, 2022 Show Cause Notice, (ECF No. 23-2, at 4-5), the full record for copyright registration number TX 9-384-065, (*Id.* at 7), and a copy of Plaintiff's deposit to the United States Copyright Office in connection with copyright number TX 9-384-065, (*Id.* at 9-60). Although Plaintiff does not seem to dispute the authenticity of these documents, it is not entirely clear whether the show cause notice is integral to the complaint because its very existence may not give rise to the rights Plaintiff asserts. Moreover, it is not necessary to refer to it to resolve the current motion. Therefore, the court will not consider this document at this time. The record for Plaintiff's copyright registration and the copy of Plaintiff's deposit do give rise to Plaintiff's

16

copyright right it asserts; therefore, the court may consider these documents.

### 3.    Copyright Infringement (Count I)

Plaintiff alleges that it "has registered its copyright in the software code for its proprietary ALF software," and the registration number is "TX 9-384-065." (ECF No. 19 ¶ 49). Additionally, "to protect the trade secret status of Plaintiff's proprietary ALF software, as part of its application to register its copyright, Plaintiff deposited only a portion of the software code with the Copyright Office, following the Copyright Office's published guidance." (*Id.* ¶ 50). Plaintiff alleges that the ALF software code "is an original work developed by" Plaintiff. (*Id.* ¶ 54).

Plaintiff alleges that the Government received the software and documentation under the Purchase Order, and the Government had access to the software code. (*Id.* ¶ 51). Plaintiff alleges[7] that without its authorization, "the Government copied and shared the copyrighted software code and documentation with Defendant," and

---

[7] Although Plaintiff does not use the phrase "upon information and belief" in this section of its amended complaint, earlier in the amended complaint, Plaintiff wrote "upon information and belief, and as shown below, JFTI and the Government made unauthorized copies in violation of JET's registered copyright in the software and constituting misappropriation of trade secrets and conversion of the Compact Disks containing the software source code." (ECF No. 19 ¶ 35). Plaintiff incorporated this allegation by reference in Count I. (*Id.* ¶ 48).

Defendant also "copied the code and documentation without Plaintiff's authorization." (*Id.* ¶ 52). Plaintiff alleges that it "suffered actual damages from lost business and revenue as a result of JFTI's unauthorized use of its code." (*Id.* ¶ 55).

Among other arguments, Defendant argues that Plaintiff's copyright infringement claim "rest[s] on JET's single, unsupported conclusion" that before returning the software, Defendant "made unauthorized copies" of the software. (ECF No. 23-1, at 22 (quoting ECF No. 1 ¶ 35)).

Plaintiff argues that information and belief pleading is appropriate because "the facts relating to Defendant's unauthorized copying are peculiarly within the possession and control of Defendant." (ECF No. 26, at 18). Additionally, Plaintiff argues that it has pleaded facts to "make[] the inference of liability for copyright infringement plausible." (*Id.*). Plaintiff lists the following facts in support of its argument: that Mr. Pilkerton "announced that the MULE team had successfully built the JET delivered ALF software in VxWorks," that to accomplish this, "the PMA-209/MULE team necessarily copied the ALF software," that Defendant's contract stated that Defendant "shall integrate ALF into the MCAP software environment during the modification phase, coordinating with the Government as needed during SETR events. The Performer (JFTI) shall deliver the updated

18

ALF software, with Government Purpose Rights, using DI-IPSC-81488 as guidance (Deliverable D68)," and that "JFTI personnel admitted that they evaluated the ALF software that JET had delivered to the Government." (*Id.* at 18-19 (citing ECF No. 1 ¶¶ 37-39)).

These facts are not sufficient to justify Plaintiff's allegation that Defendant copied the software in violation of Plaintiff's copyright. Nothing in the amended complaint suggests any facts showing Defendant copied the software, such as a later misuse of the software by Defendant or any other party. As a fact in support of its information and belief pleading, Plaintiff alleges that "the PMA-209/MULE team necessarily copied the ALF software," but Plaintiff does not explain why this is so. Plaintiff has alleged that Defendant evaluated the software, and that the Government, who is not even a party to this case, did not return the software CDs directly to Plaintiff, and instead, Defendant was the middleman between the Government and Plaintiff. It does not follow, however, that Defendant copied the software. Plaintiff has not alleged sufficient facts under its information and belief pleading to "justify interposing an allegation" of copying on Defendant. *Van Buren*, 611 F.Supp.3d at 37 (citation modified). Accordingly, Plaintiff's copyright infringement claim cannot proceed.

###### 4.    Misappropriation of Trade Secrets (Counts II and IV)

Plaintiff alleges that Defendant violated the DTSA and the MUTSA. (ECF No. 19 ¶¶ 56-62, 68-73). Plaintiff alleges that its proprietary ALF software products and documentation are trade secrets under 18 U.S.C. § 1839(3) "as they are forms and types of technical and engineering information, including programs and codes which JET has taken reasonable measures to keep secret" and "the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person, including Defendant JFTI, who can obtain economic value from the disclosure or use of the information" and "are related to services used in or intended to be used in interstate commerce." (*Id.* ¶¶ 57, 60). Similarly, Plaintiff alleges that the software products and documentation are trade secrets under the MUTSA because:

> they are information, including a program, method, technique or process that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

(*Id.* ¶ 69). Plaintiff alleges that Defendant misappropriated the ALF software products and documentation under the DTSA and MUTSA "by acquiring such trade secret information with actual or

20

constructive knowledge that the information was acquired by improper means by the Government" and by disclosing or using the information without Plaintiff's consent when Defendant knew or had reason to know that the knowledge was either "derived from or through a person who has used improper means, including breach of a duty to maintain secrecy," "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret o[r] limit the use of the trade secret," or "derived from or through a person who owed a duty to Plaintiff JET to maintain the secrecy of the trade secret or limit the use of the trade secret." (*Id.* ¶¶ 58–59, 70).

Defendant argues that Plaintiff fails to state a claim under either the DTSA or MUTSA because Plaintiff fails to identify its trade secrets with sufficient particularity, and Plaintiff fails to provide any factual allegations of improper acquisition, use, or disclosure. (ECF No. 23-1, at 17).

Plaintiff argues that it has identified its trade secrets with sufficient particularity. (ECF No. 26, at 19-21). Additionally, Plaintiff argues once again that information and belief pleading is appropriate because "facts relating to Defendant's misappropriation of trade secrets are peculiarly within the possession and control of Defendant, and there is factual information that makes the inference of liability for

21

misappropriation of trade secrets plausible." (*Id.* at 21). Plaintiff sets out the following facts to support its information and belief pleading: the Government was aware of Plaintiff's interest in protecting its software, the Government accepted delivery of the software directly from Plaintiff, Defendant approved Plaintiff's plan to deliver the software directly to the Government, Plaintiff did deliver its software directly to the Government, and Defendant "reviewed and assessed the delivered software." (*Id.*).

> To state [a] claim for misappropriation of trade secrets under The Defense Trade Secrets Act ("DTSA") and its Maryland equivalent, the Maryland Uniform Trade Secrets Act ("MUTSA"), a plaintiff must allege "that the documents at issue are trade secrets and that the defendant misappropriated those trade secrets." *Philips N. Am. LLC v. Hayes*, No. ELH-20-1409, 2020 WL 5407796, at *7 (D.Md. Sept. 9, 2020). Specifically, the DTSA requires the plaintiff to allege "(1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce." *Id.* (citing 18 U.S.C. § 1836(b)(1)). The MUTSA requires the plaintiff to establish that "(1) it possessed a valid trade secret, (2) the defendant acquired its trade secret, and (3) the defendant knew or should have known that the trade secret was acquired by improper means." *Id.* (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993)).

*Phreesia, Inc. v. Certify Glob., Inc.*, No. 21-CV-678-DLB, 2022 WL 911207, at *10 (D.Md. Mar. 29, 2022).

Even if Plaintiff has sufficiently pleaded that the software and documentation are trade secrets under the DTSA and MUTSA, Plaintiff has not alleged sufficiently that Defendant misappropriated the trade secrets.  As with Plaintiff's copyright infringement claim, Plaintiff's facts do not justify its allegations that Defendant misappropriated the trade secrets. Plaintiff does not specify how Defendant allegedly misappropriated the trade secrets, but assuming that Plaintiff alleges the misappropriation stems from the alleged copying, there are still not enough facts to support that Defendant copied the software or misappropriated it in any other way.  Again, the facts Plaintiff highlights in support of its information and belief pleading show that it was important to Plaintiff that the software was delivered directly to the Government, and Defendant evaluated the software. Once again, it does not follow that Defendant copied the software or misappropriated it in another unspecified way.  Plaintiff has not alleged sufficient facts under its information and belief pleading to "justify interposing an allegation" of trade secret misappropriation.  *Van Buren*, 611 F.Supp.3d at 37 (citation modified).  Accordingly, its trade secret misappropriation claims will be dismissed.

     **5.    Count III: Conversion**

Plaintiff alleges that Defendant committed the common law tort of conversion "[b]y obtaining and using the CDs containing JET's proprietary software without its permission." (ECF No. 19 ¶ 66). Defendant argues that the Copyright Act, 17 U.S.C. §§ 102, 103, preempts Plaintiff's conversion claim because the software falls within the scope of the subject matter of copyright. (ECF No. 23-1, at 23). Additionally, Defendant argues that Plaintiff has not alleged sufficient facts to support its information and belief pleading that Defendant copied the software. (*Id.* at 22).

Plaintiff clarifies that it is "alleging wrongful retention of the tangible object embodying the software, e.g. the Compact Disks containing the software," and therefore Plaintiff's conversion claim is not preempted. (ECF No. 26, at 22-23). Plaintiff argues that according to the agreement, the software would be delivered directly to the Government, and Defendant should have never received the CDs with the software. (*Id.*). Defendant argues that under Maryland law, conversion requires "unlawful retention," and Defendant returned the CDs to Plaintiff once it received them from the Government. (ECF No. 28, at 8).

Defendant is correct. "A conversion claim under Maryland law 'requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the

24

complete exclusion of the rightful possessor.'" *Thomas v. Artino*, 723 F.Supp.2d 822, 834 (D.Md. 2010) (quoting *Yost v. Early*, 87 Md.App. 364, 388 (1991)).  Plaintiff alleges that the Government returned the CDs to Defendant on February 21, 2023, and on or about February 27, 2023 – approximately six days later - Defendant returned the CDs to Plaintiff.  (ECF No. 19 ¶ 34).

Even if Plaintiff can allege that the Government returned the CDs improperly to Defendant instead of directly to Plaintiff, Plaintiff has not shown that Defendant committed a tort of conversion under Maryland law.  Defendant returned the CDs after six days, showing that it did not "exercise . . . unauthorized dominion and control" over the CDs "to the complete exclusion" of Plaintiff.  Additionally, although Plaintiff does not specify what it means when it alleges that Defendant used the CDs, as discussed above, Plaintiff has not provided sufficient facts to support its information and belief pleading that Defendant copied the CDs or used them in any other way. Accordingly, Plaintiff's conversion claim will be dismissed.

### 6.   Count V: Breach of Contract

Plaintiff alleges that it satisfied the terms and conditions of the Purchase Order, but Defendant did not pay the purchase price or make any payments under the Purchase Order.  (ECF No. 19 ¶ 75). Specifically, Plaintiff alleges that Defendant's RFQ on August 5,

2022, stated: "All Baseline ALF Documentation/Deliverables is to be delivered with Government Purpose data rights. No integration support or training is required at this time. The Government requests physical delivery of software and documentation via CD or via DoD SAFE. Government approval will be required in order to facilitate payment." (*Id.* ¶ 81). Plaintiff further alleges that this "no training" language was in the original official request and the Purchase Order that Defendant prepared, and no written agreement changed this language. (*Id.* ¶ 82). Plaintiff alleges that it delivered all applicable and available products that were set out in the RFQ. (*Id.* ¶ 84).

Plaintiff alleges that although it was not required to provide training under the Purchase Order, Defendant instructed Plaintiff "under threat of being held not in compliance with the terms of the Purchase Order to provide training and integration/support post-delivery." (*Id.* ¶ 86). Despite not having an obligation to do so, Plaintiff provided:

> build instructions, two additional documents/guides, the latest capabilities/versions of SDK and Core (originally intended to be the immediately following purchase order and pre-funded as such on JFTI's contract in preparation), the project configuration files used to build/compile, software adapter products to account [for] the MULE's lab deficiencies and

> lack of capability/knowledge, on-call
> support, and meetings.

(*Id.*).

Defendant argues that Plaintiff's breach of contract claim fails because Defendant and the Government had a right to inspect the software before it was accepted. (ECF No. 23-1, at 15-17). Defendant states that "[o]n or about September 22, 2022, JET delivered its software directly to the Government." (*Id.* at 10). "[A]fter exercising its rights under the Purchase Order to inspect JET's software, the Government requested [JFTI] contact JET to explain that JET's software was lacking certain key components that would enable the software to be reusable, mainly the 'ALF Core and [Software Development Kit].'" (*Id.*). Defendant also cites to Plaintiff's exhibit that includes a conversation between Mr. Jaster of JET and a team member of PMA-209, where "Mr. Jaster admits that the software delivered to the Government was deficient because, as delivered, the software was 'still in [its] infancy and needs time and effort to grow.'" (*Id.* at 11 (alteration in original) (quoting ECF No. 1-9, at 2)).

Defendant notes that Plaintiff acknowledges that Defendant's Standard Terms and Conditions apply to the Purchase Order (ECF Nos. 23, at 16 n.5; 19 ¶ 16); Plaintiff attached the Standard Terms and Conditions to its initial complaint and references it in its

amended complaint.  (ECF Nos. 1-6; 19 ¶ 16).  The relevant text is as follows:

> **1. Inspection/Acceptance**
> The seller shall only tender for acceptance those items that conform to the requirements of this order.  The buyer reserves the right to inspect or test any supplies or services that have been tendered for acceptance.  The buyer may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price.  The buyer must exercise its post-acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.
> The U.S. Government may engage in the same inspection activities as [JFTI].
>
> . . . .
>
> **13. Termination for Cause**
> The buyer may terminate this contract, or any part hereof, for cause in the event of any default by the seller, or if the seller fails to comply with any order terms and conditions, or fails to provide the buyer, upon request, with adequate assurances of future performance.  In the event of termination for cause, the buyer shall not be liable to the seller for any amount for supplies or services not accepted, and the seller shall be liable to the buyer for any and all rights and remedies provided by law.  If it is determined that the buyer improperly terminated this order for default, such termination shall be deemed a termination for convenience.

(ECF No. 1-6, at 2, 5).  Accordingly, Defendant argues that Defendant and the Government had a right under the Purchase Order

28

to inspect the software.    (ECF No. 23-1, at 15-16).    "The Government inspected the software and, pursuant to its rights under the agreement, exercised its right not to accept the software and returned it." (*Id.* at 16).    Defendant argues that Plaintiff has not alleged that Defendant was required to accept the software. (*Id.*).

Plaintiff contends that Defendant misstates facts regarding Plaintiff's performance under the Purchase Order, and that Defendant's breach of contract defense is meritless. (ECF No. 26, at 23-24).    First, Plaintiff argues that while Defendant states that "[o]n or about September 22, 2022, JET delivered its software directly to the Government," the amended complaint states that "on September 9, 2022, JET delivered directly to the Government the entirety of the Purchase Order deliverables, *i.e.* a copy of its baseline ALF source code and documentation." (*Id.* at 23-24).    On September 22, 2022, Mr. Pilkerton of PMA-209 "accepted delivery of a DVD comprising ALF PowerPC 653 Supplemental Software, not the baseline ALF software that was the subject of [the Purchase Order]." (*Id.* at 24).

Regarding Mr. Jaster's statement that the software was in its infancy, Plaintiff disputes Defendant's characterization of "infancy" as meaning "deficient." (*Id.*).    Plaintiff asserts that "[n]othing in the text message from Mr. Jaster states, implies or

29

suggests that the software delivered to the Government under [the Purchase Order] was or is deficient." (*Id.*).

Next, Plaintiff argues that Defendant's defense rests on its assertion that Defendant and the Government were exercising their right to inspect. (*Id.* at 25). Plaintiff argues, however, that this right "does not extend to items that were not in the Purchase Order," and "does not absolve JFTI or the Government from complying with the substantive terms of the Purchase Order." (*Id.*). Plaintiff asserts that the "ALF Core and Software Development Kit," were not included in the Purchase Order; therefore, it is irrelevant that the Government found that Plaintiff's software "was lacking certain key components that would enable the software to be reusable, mainly the 'ALF Core and [Software Development Kit].'" (*Id.* at 24-25). Plaintiff asserts that Defendant and the Government were aware that the ALF Core and Software Development Kit were not included in the Purchase Order. (*Id.* at 25). Plaintiff alleges that the Purchase Order was for "baseline ALF software and documentation only, which JET timely delivered to the Government under the terms incorporated in [the] Purchase Order[.]" (*Id.*).

> "Under Maryland law, the elements of a claim for breach of contract are 'contractual obligation, breach, and damages.'" *Kantsevoy v. LumenR LLC*, 301 F.Supp.3d 577, 596 (D.Md. 2018) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D.Md.

2015)). "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 649 (D.Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)). Maryland law requires that a plaintiff "alleging a breach of contract 'must of necessity allege with certainty and definiteness' *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Jaigobin v. U.S. Bank, NA*, No. 18-cv-1776-DKC, 2019 WL 4598000, at *7 (D.Md. Sept. 23, 2019), *aff'd*, 797 F.App'x 776 (4th Cir. 2020) (quoting *RRC Northeast, LLC v. BAA Maryland, Inc.*, 412 Md. 638, 655 (2010)) (emphasis in original). A plaintiff must also show that it itself is not in material breach of the contract. *See Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 655 (4th Cir. 2017) ("'[A] party who commits the first breach of contract,' if material, 'is not entitled to enforce the contract.'") (quoting *Horton v. Horton*, 254 Va. 111, 115 (1997)).

*Gregory Packaging, Inc. v. Sodexo Operations, LLC*, No. 24-CV-187-DKC, 2024 WL 4335666, at *2 (D.Md. Sep. 26, 2024).

Plaintiff has alleged that a contract existed between Plaintiff and Defendant, Plaintiff performed by delivering the baseline ALF software and documentation, and Defendant breached its obligation by failing to provide any payment under the Purchase Order. (ECF No. 19 ¶¶ 15, 23, 32). Additionally, Plaintiff has alleged damages as a result of Defendant's breach. (*Id.* ¶¶ 80, 90).

The parties spend much time arguing whether Plaintiff performed under the contract and whether Defendant breached the contract, and the parties rely on the various exhibits in support of their respective positions.   Although the court may consider the exhibits that Plaintiff attached to its complaint and amended complaint, the case nevertheless remains at the motion to dismiss stage.   At this stage, Plaintiff has alleged sufficient facts to support its breach of contract claim, and the various exhibits do not prevent Plaintiff's claim from proceeding.   Accordingly, Defendant's motion to dismiss will be denied as to Plaintiff's breach of contract claim.[8]

---

[8] Defendant also argues that the amended complaint should be dismissed, or the court should require a more definitive statement of the claims, because the amended complaint contains "improper shotgun pleading" by incorporating by reference preceding allegations.   (ECF No. 23-1, at 27).   As Plaintiff argues, Judge Gallagher has previously stated:

> [T]he Amended Complaint is not a "shotgun pleading."   A "shotgun pleading" is one that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief[.]"   *Lee v. Meyers*, No. ELH-21-1589, 2022 WL 252960, at *11 (D.Md. Jan. 27, 2022) (quoting *Jackson v. Warning*, PJM-15-1233, 2016 WL 7228866, at *4 (D.Md. Dec. 13, 2016)).   Again, the Amended Complaint is clear enough to allow Defendant[] to respond, because [Defendant] *did* meaningfully respond. The Amended Complaint also makes clear "which allegations of fact are intended

### III. Motions to Seal

#### A.   Standard

The United States Court of Appeals for the Fourth Circuit has explained:

> It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 428 (4th Cir. 2005). The right of public access springs from the First Amendment and the common-law tradition

> to support which claims for relief[.]" *Lee*, 2022 WL 252960, at *11. Here, Defendant[] take[s] issue with the Amended Complaint's inclusion of boilerplate language under each count that incorporates all preceding paragraphs. Nearly every complaint filed in this Court (and others, in this Court's experience) contains similar language. That boilerplate is, therefore, more the hallmark of habitually cautious lawyering than "the hallmark of a shotgun pleading" as Defendant[] argue[s]. . . . [A]s is customary, the Amended Complaint contains a fact-based recitation, followed by the causes of action it alleges, with enough explanation within each cause of action to tie the factual allegations to the alleged violations of law. That is all that is required, and nothing demonstrates the adequacy of the Amended Complaint's general coherence better than Defendants' substantive responses to it.

*Baxter v. AmeriHome Mortg. Co.*, 617 F.Supp.3d 346, 351 (D.Md. 2022) (footnote omitted).

that court proceedings are presumptively open
to public scrutiny. *Va. Dep't of State Police
v. Wash. Post*, 386 F.3d 567, 575 (4th Cir.
2004). "The distinction between the rights of
access afforded by the common law and the
First Amendment is significant, because the
common law does not afford as much substantive
protection to the interests of the press and
the public as does the First Amendment." *In
re United States for an Order Pursuant to 18
U.S.C. Section 2703*, 707 F.3d 283, 290 (4th
Cir. 2013) (quoting *Va. Dep't of State Police*,
386 F.3d at 575) (internal quotation marks
omitted). The common-law presumptive right of
access extends to all judicial documents and
records, and the presumption can be rebutted
only by showing that "countervailing interests
heavily outweigh the public interests in
access." *Rushford* [*v. New Yorker Magazine,
Inc.*], 846 F.2d [249,] 253 [(4th Cir. 1988)].
By contrast, the First Amendment secures a
right of access "only to particular judicial
records and documents," *Stone* [*v. Univ. of Md.
Med. Sys. Corp.*], 855 F.2d [178,] 180 [(4th
Cir. 1988)], and, when it applies, access may
be restricted only if closure is "necessitated
by a compelling government interest" and the
denial of access is "narrowly tailored to
serve that interest," *In re Wash. Post Co.*,
807 F.2d 383, 390 (4th Cir. 1986) (quoting
*Press-Enter. Co. v. Superior Court*, 464 U.S.
501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)
(internal quotation marks omitted)).

*Doe v. Pub. Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014).  The

*Public Citizen* court further explained that:

When presented with a motion to seal, the law
in this Circuit requires a judicial officer to
comply with the following procedural
requirements: (1) provide public notice of
the sealing request and a reasonable
opportunity for the public to voice objections
to the motion; (2) consider less drastic
alternatives to closure; and (3) if it

34

> determines that full access is not necessary,
> it must state its reasons—with specific
> findings—supporting closure and its
> rejections of less drastic alternatives.

*Id.* at 272 (citing *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984)); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). Additionally, Local Rule 105.11 requires the party seeking sealing to provide "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."

### B. Analysis

### 1. Motion to Seal Exhibit 2

Plaintiff moves to seal Exhibit 2 to its amended complaint. (ECF Nos. 19-3; 24). The motion was filed more than fourteen days ago, and no opposition has been filed. Plaintiff argues that Exhibit 2 "includes Navy Controlled Unclassified Information ('CUI') and the Justice Department has requested that the Exhibit be sealed." (ECF No. 24, at 1). The United States has filed an amicus brief in support of Plaintiff's motion to seal. (ECF No. 30).[9] The United States explains that Exhibit 2 is an email chain between Mr. Jaster from JET and a Navy employee, and it includes

---

[9] Pursuant to Local Rule 105.12(a), the United States "may file an amicus brief without the consent of the parties or leave of court."

presentation slides that are marked as CUI.  (*Id.* at 1).   The United States also provides a declaration of a Program Security Manager confirming that sealing is appropriate. (ECF No. 30-1).

Plaintiff argues that there is no alternative to sealing, and the United States adds that this is because all of the slides are CUI, and the email discusses the slides.  (ECF Nos. 24, at 1; 30, at 3).  Accordingly, Plaintiff has met its burden, and Plaintiff's motion to seal Exhibit 2 to its amended complaint will be granted.

### 2.   Motion to Seal Amicus Brief

The United States moves to seal its amicus brief and supporting exhibit.  (ECF No. 32).  The motion was filed more than fourteen days ago, and no opposition has been filed.  The United States argues that its brief and exhibit discuss information contained in Exhibit 2, and its "interest in protecting sensitive Department of Defense information outweighs the public interest in access to the Brief and its exhibit." (*Id.* at 5).  The United States argues that "[d]ue to the protected nature of the information discussed throughout the Brief and Exhibit 1 to the Brief, an alternative to sealing would not be sufficient." (*Id.*).

There does not, however, appear to be sensitive information in the amicus brief or exhibit.  Instead, the brief and exhibit discuss what CUI is in general, and the relevant legal sources for protecting CUI.  The motion to seal will be denied.  If the United

States wishes to withdraw the exhibit, it may do so within fourteen days.  Otherwise, the documents will be unsealed.  *See* Local Rule 105.11.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part, Plaintiff's motion to seal Exhibit 2 will be granted, and the United States of America's motion to seal amicus brief will be denied.  Plaintiff has not explicitly requested an opportunity to amend the complaint and Defendant has requested that the complaint be dismissed with prejudice.  It is appropriate to afford Plaintiff an opportunity to try to supply the facts necessary to proceed.  Any motion for leave to amend must be filed within twenty-one days.  A separate order will follow.

                                    /s/
                         _____
                         DEBORAH K. CHASANOW
                         United States District Judge

37