IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JET SYSTEMS, LLC                :

      v.                              :    Civil Action No. DKC 24-1628

                                :

J.F. TAYLOR, INC.               :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case are the motions filed by Plaintiff/Counter-Defendant JET Systems, LLC ("JET") to direct entry of final judgment pursuant to Fed.R.Civ.P. 54(b) on Counts I, II, and IV of the Amended Complaint, (ECF No. 47), to strike defenses pursuant to Fed.R.Civ.P. 12(f), (ECF No. 50), to dismiss the Counterclaim pursuant to Fed.R.Civ.P. 12(b)(6), (ECF No. 49), and for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, (ECF No. 56). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions to direct entry of final judgment, to dismiss the Counterclaim, and for sanctions are denied, and the motion to strike defenses is granted in part and denied in part.

## I.   Background

### A.   Factual Background[1]

Defendant/Counter-Plaintiff J.F. Taylor, Inc. ("JFTI") "designs, engineers, and manufactures products and solutions for the Government." (ECF No. 46, at 21).  In the project at the heart of this case, the Government "engaged and contracted J.F. Taylor to design, develop, build, and test prototype computers for the PMA209 Mission Computer Adjust Processor ('MCAP') Program." (*Id.* (citing ECF No. 1-3)).  As part of the project, JFTI was to "'explore the potential integration of reusable software products' into the Government's systems." (*Id.* (quoting ECF No. 1-3)).

Accordingly, JFTI contacted JET in August 2022 to request a quotation for JET's reusable software. (*Id.* at 22 (citing ECF No. 1-3)).  JFTI's request for quotation ("RFQ") explained that the Government had "asked J.F. Taylor to explore the potential integration of reusable software products such as [JET's] Adaptive Layer Framework (ALF).  Specifically, J.F. Taylor would like to issue a purchase order to JET Systems for the Baseline ALF software

---

[1] The facts as alleged by JET are recounted in the court's September 17, 2025, memorandum opinion.  (ECF No. 35, at 1–11). JFTI's factual allegations in the Answer and Counterclaim are central to the pending motion to dismiss and motion to strike and were not included in prior opinions, so those are the facts provided here.  Therefore, the facts herein are as alleged in the Counterclaim or as provided in authentic documents integral to the Counterclaim.

products and documentation." (ECF No. 1-3, at 2). JFTI's RFQ allegedly incorporated the "reusable" aspect by requiring that the software include "build instructions, all binaries, source code, specif[ied] software/hardware dependencies, and container images (if applicable)." (ECF No. 46, at 22 (quoting ECF No. 1-3, at 2)). The RFQ also listed twenty-six items under the header "Baseline ALF Documentation/Deliverables" and stated that it did not require "integration support or training." (ECF No. 1-3, at 2-3). Finally, the RFQ provided that "Government approval [would] be required in order to facilitate payment." (ECF No. 46, at 22 (quoting ECF No. 1-3, at 3)).

In response to the RFQ, JET provided a quotation for its software with invoice number 20220808-001. (ECF Nos. 46, at 22; 1-4, at 2). The price quoted was $4,074,000. (ECF No. 1-4, at 2). JFTI alleges that JET "[a]cknowledg[ed] the requirements as to the reusability of the software" by including in its quotation that its software would include "build instructions, all binaries, source code, specif[ied] software/hardware dependencies, and container images (if applicable)." (ECF No. 46, at 22 (quoting ECF No. 1-4, at 2)). JET also represented in the quotation that the software would "conform to specifications agreed upon by both parties prior to delivery and be free of defects in workmanship

3

and material under normal installation, use, and service." (*Id.* (quoting ECF No. 1-4, at 2)).

On August 17, 2022, JFTI issued Purchase Order No. 309975 ("PO") to JET. (ECF Nos. 46, at 22; 1-5, at 2). The PO was for "Baseline ALF Software," which it described as "Baseline ALF Software Invoice # 20220808-001," and it specified a delivery date of September 11, 2022, for a price of $4,074,000. (ECF No. 1-5, at 2). The PO stated that JFTI's standard terms and conditions apply, (ECF No. 46, at 23 (citing ECF No. 1-5, at 2)), which permit JFTI and the Government the right to inspect items tendered for acceptance and terminate the contract for cause "if the seller fails to comply with any order terms and conditions," (*Id.* (quoting and citing ECF No. 1-6, at 2, 5)). When JFTI terminates for cause, it is not "liable to the seller for any amount for supplies or services not accepted." (*Id.* (quoting ECF No. 1-6, at 5)).

In September 2022, JET delivered the ALF software directly to the Government.[2] (*Id.*). After inspecting the software, the Government asked JFTI to contact JET "to explain that JET's software was lacking certain key components that would enable the software to be reusable, mainly the 'ALF Core and [Software

---

[2] The parties dispute whether the software was delivered on September 9 or September 22. Although the date of performance was September 11, rendering this dispute potentially material, JFTI's breach of contract claim does not rest on any allegation of untimely delivery. The dispute is thus immaterial.

4

Development Kit].'"  (*Id.* at 23–24 (quoting ECF No. 1-8, at 2)). JFTI promptly communicated that message to JET; the Government also reached out to JET directly.  (*Id.* at 24 (quoting ECF No. 1-8, at 2) (citing ECF No. 1-15, at 2)).  JET's CEO, Scott Jaster, told a member of the PMA209 project that the ALF software was "still in [its] infancy and need[ed] time and effort to grow." (*Id.* (first alteration in original) (quoting ECF No. 1-9, at 2)). JFTI alleges that this statement constituted an admission of the software's deficiency.  (*Id.*).

On November 10, 2022, the Government sent a Letter of Concern to JFTI detailing the deficiencies in the software it received from JET, which JFTI passed along to JET on November 14.  (*Id.* (citing ECF Nos. 1-10; 1-11)).  JFTI also notified JET in the November 14 letter that JET had until November 23 to cure the breach, otherwise JFTI would terminate the PO for cause.  (*Id.* (citing ECF No. 1-11)).  After that deadline passed with no resolution, JFTI sent another letter to JET on December 2, 2022, reasserting that JET had breached the PO for failure to tender a reusable framework and requesting a response by December 7.  (*Id.* at 24–25 (citing ECF No. 23-2)).  JFTI alleges that JET "repeatedly stated its refusal and inability to cure."  (*Id.* at 25 (quoting ECF No. 1-12, at 2)).  JFTI terminated the PO for cause on December 9, 2022, explaining that the termination was due to "JET's failure

5

to perform and breaches of warranty." (*Id.* (quoting ECF No. 1-12, at 2)).  The Government then returned the ALF software to JET via JFTI in February 2023. (*Id.* (citing ECF No. 1-17)).  JFTI did not pay JET the PO price based on its position that JET had materially breached the PO. (*Id.*).

JFTI's contract with the Government nonetheless required JFTI to provide the requisite software, so JFTI expended its own resources to develop the software. (*Id.* at 25–26).

B.   **Procedural Background**

JET filed the operative Amended Complaint against JFTI in this court on August 21, 2024. (ECF No. 19).  In the Amended Complaint, JET asserted five counts: copyright infringement (Count I), violation of the Defend Trade Secrets Act ("DTSA") (Count II), conversion (Count III), violation of the Maryland Uniform Trade Secrets Act ("MUTSA") (Count IV), and breach of contract (Count V). (*See id.*).  The court granted JFTI's motion to dismiss Counts I-IV of the Amended Complaint, but denied it as to Count V. (ECF Nos. 35; 36).  JET then moved for leave to file a Second Amended Complaint, proposing amendments to Counts I, II, and IV. (ECF No. 41).  The court denied the motion for leave to amend as futile and dismissed Counts I-IV with prejudice. (ECF Nos. 44; 45).  On December 3, 2025, JFTI filed its Answer, including nine affirmative

6

defenses, as well as a Counterclaim for breach of contract requesting more than $2 million in damages.  (ECF No. 46).

Since JFTI filed its Answer and Counterclaim, JET has filed four separate motions.  First, on December 3, 2025, JET filed a motion to direct entry of final judgment pursuant to Fed.R.Civ.P. 54(b) as to Counts I, II, and IV of the Amended Complaint.  (ECF No. 47).  JFTI responded on December 17, (ECF No. 48), and JET replied on December 25, (ECF No. 51).

Second, on December 22, 2025, JET filed a motion to strike defenses pursuant to Fed.R.Civ.P. 12(f).  (ECF No. 50).  JFTI responded on January 5, (ECF No. 53), and JET replied on January 13, (ECF No. 55).

Third, on December 22, 2025, JET filed a motion to dismiss the Counterclaim pursuant to Fed.R.Civ.P. 12(b)(6).  (ECF No. 49). JFTI responded on January 5, (ECF No. 52), and JET replied on January 12, (ECF No. 54).

Fourth, on February 11, 2026, JET filed a motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.  (ECF No. 56). JET first served the motion on JFTI on January 20, 2026, in compliance with Fed.R.Civ.P. 11(c)(2).  (*Id.* at 1-2).  JFTI has not yet responded.  Local Rule 105.8.b requires a response to a motion for sanctions only upon court order.

## II.  Motion to Direct Entry of Final Judgment

JET's first motion seeks entry of final judgment under Fed.R.Civ.P. 54(b) on Counts I (Copyright Infringement), II (DTSA), and IV (MUTSA) of the Amended Complaint.[3]  When an action consists of multiple claims, Rule 54(b) authorizes a court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but "only if the court expressly determines that there is no just reason for delay."  It is axiomatic that the entry of final judgment under Rule 54(b) is "the exception rather than the norm" and should not "be granted routinely," given the interest in preventing piecemeal appeals. *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993) (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).  Whether to direct final judgment on fewer than all claims and thereby certify immediate appeal is a two-step inquiry: (1) the judgment must be final, and (2) there must be no just reason for delay.  *Curtiss-Wright*, 446 U.S. at 7–8.  The decision is "left to the sound judicial discretion of the district court." *Id.* at 8.

JFTI does not contest that the judgments on Counts I, II, and IV are final, so the only question is whether there is any just

---

[3] Because this opinion discusses both the Amended Complaint and the Counterclaim, the court refers to each party by its name rather than its position in the litigation to avoid confusion.

reason for delay.  The United States Court of Appeals for the Fourth Circuit has offered the following factors to consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Braswell*, 2 F.3d at 1335-36 (quoting *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3$^{d}$ Cir. 1975)) (citing *Curtiss-Wright*, 446 U.S. at 8).  The court also "must take into account judicial administrative interests as well as the equities involved."  *Curtiss-Wright*, 446 U.S. at 8.

JET contends that all five factors favor certification, whereas JFTI believes all five factors weigh against certification.  Core to their dispute is the relationship between the adjudicated copyright infringement and trade secrets claims on the one hand, and the unadjudicated breach of contract claim (and counterclaim) on the other.  JFTI's motion to dismiss the Amended Complaint demonstrates the interrelationship of the adjudicated and unadjudicated claims.  There, JFTI moved to dismiss the copyright infringement, trade secrets, and breach of contract

9

claims for the same reason: The PO reserved to JFTI the right to inspect the ALF software prior to acceptance.  (ECF No. 23-1, at 16).  Given that the same issue is implicated in the adjudicated and unadjudicated claims, the first and third *Braswell* factors counsel against certification.  Even if different provisions of the PO are ultimately dispositive of the adjudicated and unadjudicated claims, the claims nevertheless raise "issues of the same contract" and would require the Fourth Circuit "to review . . . the parties' business relationship on two separate occasions," an outcome "certainly not in the best interests of efficient judicial administration."  *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, No. 02-cv-1565-DKC, 2004 WL 86179, at *5 (D.Md. Jan. 20, 2004).

The second and fourth *Braswell* factors do not weigh against certification.  As for the second factor, although the adjudicated and unadjudicated claims implicate the same issue of inspection rights, a later decision on the unadjudicated breach of contract claim that JFTI was entitled to inspect the ALF software would not moot the copyright infringement and trade secrets claims so much as multiply appeals in the case.  The fourth factor is likewise not an obstacle because there is no money judgment on the copyright and trade secrets claims against which a future money judgment on JFTI's breach of contract counterclaim would be set off.

10

The weight of the first and third *Braswell* factors easily overcomes any countervailing force of the second and fourth factors. Considerations related to the final factor only bolster the conclusion that 54(b) certification is inappropriate. Importantly, the *Braswell* court emphasized that "the fact the parties on appeal remain contestants below militates against the use of Rule 54(b)." *Braswell*, 2 F.3d at 1336–37 (citing *Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38, 44 (1st Cir. 1988)). Here, that would be precisely the case. JET resists the weight of this consideration only on the ground that the dissent in *Braswell* would have approved certification despite the parties on appeal remaining contestants below. (ECF No. 47-1, at 6–7). That well-reasoned dissent, however, remains a dissent; it does not compel any outcome in this court. In any event, the *Braswell* dissent placed considerable emphasis on the separability of the adjudicated and unadjudicated claims at issue and did not contest the relevance of identity of the parties on appeal and below. *See Braswell*, 2 F.3d at 1339–42 (Luttig, J., dissenting). Another consideration is the complexity of the outstanding claims to be adjudicated. *See Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions, LLC*, No. 12-cv-131, 2012 WL 13027000, at *3 (E.D.Va. Aug. 24, 2012). Here, the remaining breach of contract

11

claim and counterclaim do not raise complex issues that would protract the litigation and thereby unduly delay appellate review.

In light of the considerations detailed above, Rule 54(b) certification is not warranted.  JET's motion will be denied.

## III. Motion to Strike Defenses

Next, JET moves to strike all of JFTI's affirmative defenses. The nine affirmative defenses JFTI includes in its Answer are (1) failure to state a claim, (2) lack of subject matter jurisdiction, (3) no damages or other harm, (4) no breach of contract, (5) breaching party cannot recover, (6) unclean hands, (7) no entitlement to recovery, (8) good faith, and (9) unjust enrichment. (ECF No. 46, at 19-20).  JET argues that the first five defenses are redundant negative defenses, the sixth and seventh defenses are inadequately pleaded under the *Twombly/Iqbal* standard, and the eighth and ninth defenses are immaterial or impertinent; therefore, JET contends, they all should be struck under Fed.R.Civ.P. 12(f).  (ECF No. 50-1, at 8-11).  JFTI responds that JET's motion to strike is untimely because it was filed after its motion to dismiss.  (ECF No. 53, at 1 n.1).  Additionally, JFTI argues, any negative defense should be construed as a denial rather than struck, the affirmative defenses are adequately pleaded, and JET is not so prejudiced as to justify striking the affirmative defenses.  (*Id.* at 7-12).

12

As a threshold matter, the motion will be considered despite JFTI's timeliness concerns.  Fed.R.Civ.P. 12(f)(2) provides that a party must make a motion to strike "before responding to the pleading," if a response is allowed.  Fed.R.Civ.P. 12(g) provides that a motion under Rule 12 may be joined with any other motion allowed by the rule, and that all such motions available at that time should be included or they may not be made later.  First of all, a motion to dismiss is not a responsive pleading.  *See Powers-Barnhard v. Butler*, No. 19-cv-1208, 2021 WL 105752, at *2 (N.D.N.Y. Jan. 12, 2021) (explaining that a motion to dismiss is not a responsive pleading under Rule 12(f)).  Second, although JET technically made its two Rule 12 motions separately, and Fed.R.Civ.P. 12(g)(2) generally requires that all Rule 12 defenses and objections be made in the same motion, the four-minute gap between the two motions can easily be overlooked.  The two Rule 12 motions will be treated as filed simultaneously.  *See Aviles-Cervantes v. Outside Unlimited, Inc.,* 276 F.Supp.3d 480, 487 (D.Md. 2017) ("[C]ourts routinely exercise discretion in applying [Rule 12(g)(2)].").  Finally, even if the motion were untimely, Rule 12(f)(1) permits a court to strike defenses "on its own," and this authority "has been interpreted to allow [a] district court to consider untimely motions to strike." 5C Wright & Miller's Federal Practice & Procedure § 1380 (3d ed. 2026) (collecting cases); *see*

13

*also, e.g.*, *Dane v. Commonwealth Partners, LLC*, No. 22-cv-449, 2023 WL 3931511, at *1 (E.D.N.C. May 4, 2023) (quoting same).

As for the parties' substantive arguments, another court in this district recently laid out the appropriate legal standard:

> Fed.R.Civ.P. 12(f) allows the Court to, on motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Such motions are "generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed. 1990)). And so, "courts 'generally require the moving party to establish that the materials to be struck prejudice the moving party in some way.'" *Alston v. TransUnion*, No. 16-491, 2017 WL 464369, at *1 (D.Md. Feb. 1, 2017) (quoting *Asher & Simons, P.A. v. j2 Glob. Canada, Inc.*, 965 F.Supp.2d 701, 705 (D.Md. 2013)).
>
> "An affirmative defense is the defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Emergency One, Inc. v. Am. Fire Eagle Engine, Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (internal quotations and citation omitted). Such defenses are contrasted with negative defenses, which are those that "den[y] or 'directly contradict[] elements of the plaintiff's claim for relief.'" *See Jones v. Aberdeen Proving Ground Fed. Credit Union*, No. 21-1915, 2022 WL 2703825, at *6 (D.Md. July

14

12, 2022) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1270 (3ᵈ ed. 2022)).

*Titan Sys., LLC v. SRI Int'l*, 787 F.Supp.3d 72, 77 (D.Md. 2025). Although courts in this district are split as to whether affirmative defenses are subject to a fair notice pleading standard or a heightened *Twombly*/*Iqbal* pleading standard, *see id.* at 78 (collecting cases), and the parties unsurprisingly dispute the applicable standard, that question is not dispositive here.

JET correctly identifies the first five affirmative defenses as negative defenses. It is JET's burden to state a claim, establish subject matter jurisdiction, prove damages, prove breach, and prove that it has not materially breached the contract itself. Accordingly, any failure to satisfy these burdens is a defect in JET's claim and thus a negative defense. *See Small Bus. Fin. Sols., LLC v. Cavalry, LLC*, No. 22-cv-1383-DKC, 2023 WL 284449, at *11 (D.Md. Jan. 18, 2023) (failure to state a claim is not an affirmative defense); *Johnson v. Md. Dep't of Lab., Licensing, & Regul.*, 386 F.Supp.3d 608, 614 (D.Md. 2019) (distinguishing matters of subject matter jurisdiction from affirmative defenses); *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001) (it is the plaintiff's burden to prove breach and, to the extent he seeks them, damages); *Collins/Snoops Assocs., Inc. v. CJF, LLC*, 190 Md.App. 146, 161 (2010) (it is the plaintiff's burden to prove his own performance of all material contractual

15

obligations).   These negative defenses are in fact denials that are redundant of other denials in the Answer.  (*See* ECF No. 46, at 3 (denying subject matter jurisdiction allegations), 17–19 (denying allegations of breach, damages, and JET's performance of its material obligations)).

Courts generally will decline to strike such improperly labeled defenses and instead construe them as denials, unless doing so would unduly prejudice the moving party.  *Compare Alston*, 2017 WL 464369, at *3 (construing negative defenses as denials)*, with Titan Sys.*, 787 F.Supp.3d at 81 (striking negative defenses because moving party would otherwise be prejudiced).  At least one court has determined that the moving party is prejudiced by retaining negative defenses due to an asserted need "to conduct extensive discovery to determine the factual bases for these negative defenses."  *Titan Sys.*, 787 F.Supp.3d at 81 (citation modified). JET asserts precisely that rationale in its argument that it will suffer prejudice.  (ECF No. 50-1, at 8–10 (stating as to each negative defense that "[r]equisite prejudice to JET exists because of the need for extensive discovery if the defense is not stricken")). Generally speaking, however, such discovery concerns support a finding of prejudice where there are factually unsupported *affirmative* defenses.  *See, e.g.*, *Small Bus. Fin. Sols.*, 2023 WL 284449, at *8 n.10 (finding prejudice where the

legal theory underpinning an unsupported affirmative defense was unclear and may ultimately require additional discovery); *Jones*, 2022 WL 2703825, at *6 (finding prejudice where affirmative defense lacked "any sort of factual detail" and thus may increase the cost and burden of discovery).  It is not clear why a negative defense that merely amounts to a redundant denial would affect the scope of discovery.  *See Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D.Md. 2012) ("Because these issues will continue to be litigated, it will serve no purpose to strike these [negative] defenses.").   Therefore,  the  "drastic  remedy"  of striking these affirmative defenses is not warranted, *Waste Mgmt.*, 252 F.3d at 347, and they will instead be construed as denials.

The  sixth  affirmative  defense,  unclean  hands,  is  a  true affirmative defense but is inapplicable to JET's only remaining claim  of  breach  of  contract.   Unclean  hands  is  an  equitable defense, whereas breach of contract is a legal claim.  "Consistent with the[] distinctions between law and equity, the Maryland Court of Special Appeals has found the doctrine of unclean hands to be inapplicable in breach of contract cases, noting that '[a] party is not guilty of fraudulent or illegal conduct,' such that its hands  are  rendered  unclean,  'by  merely  breaking  a  contractual obligation.'"   *Pa.  Nat'l  Mut.  Cas.  Ins.  Co.  v.  Kirson*,  525 F.Supp.3d 628, 636 (D.Md. 2021) (second alteration in original)

17

(quoting *Greentree Series V, Inc. v. Hofmeister*, 222 Md.App. 557, 571 (2015)).  An affirmative defense is appropriately struck, even absent a showing of prejudice, "when the defense is clearly legally insufficient."  5C Wright & Miller's Federal Practice & Procedure § 1381 n.41 (3$^{d}$ ed. 2026) (collecting cases); *see also Small Bus. Fin. Sols.*, 2023 WL 284449, at *8 (explaining that the general requirement of prejudice does not apply in every case, including when an affirmative defense is baseless and legally unsupported).  Thus, the sixth affirmative defense is struck.

The seventh affirmative defense, that "JET is not entitled to any recovery against J.F. Taylor by virtue of the allegations set forth in the Counterclaim," is too vague.  It does not identify with any specificity *which* allegations in the Counterclaim bar JET's recovery.  Under either a fair notice pleading standard or a *Twombly*/*Iqbal* pleading standard, this defense fails to put JET on notice of the nature of the defense.  And JET will be prejudiced by retention of this defense because it will need "to use up some of [its] limited discovery requests and time to figure out exactly what the factual bases are" for this defense.  *Villa v. Ally Fin., Inc.*, No. 13-cv-953, 2014 WL 800450, at *4 (M.D.N.C. Feb. 28, 2014) (citation modified).  The seventh affirmative defense is struck.

The eighth affirmative defense, good faith, is inapplicable. JET has not put JFTI's good faith in question either by asserting

18

a breach of the implied covenant of good faith and fair dealing or by seeking punitive damages (which are unavailable in breach of contract claims, anyway, *Munday v. Waste Mgmt. of N. Am., Inc.*, 997 F.Supp. 681, 685 (D.Md. 1998) (citation modified)).  Because this defense is "clearly legally insufficient," 5C Wright & Miller's Federal Practice & Procedure § 1381 n.41 (3ᵈ ed. 2026) (collecting cases), and in fact irrelevant, it is struck, too.

Finally, the ninth defense of unjust enrichment is not a defense at all.  JFTI explains this "affirmative defense" as follows: "If JET were to recover anything based on the claims in the [Amended Complaint], it would be unjust enrichment because it is not entitled to payment."  (ECF No. 53, at 10 n.7).  That explanation is difficult to comprehend.  It amounts to little more than a complaint that it would be unfair for JFTI to lose on the breach of contract claim.  Surely many, if not all, defendants share that grievance in their cases.  But affirmative defenses operate to bar recovery, and JFTI's unjust enrichment "defense" presupposes recovery.  Any argument that JET is not entitled to payment is already captured in JFTI's other defenses and denials, as well as its Counterclaim.  The ninth affirmative defense is struck.

In short, the first five affirmative defenses are construed as denials and the final four affirmative defenses are struck.[4]

## IV.  Motion to Dismiss Counterclaim

JFTI asserts a single breach of contract count in its Counterclaim, alleging that JET materially breached the PO in two ways: (1) "Failing to provide a deliverable that conformed to the requirements of the Purchase Order, including by not providing a reusable framework or other software deliverable that fulfilled the Government's requirements," and (2) "[f]ailing to resolve the breaches of the Purchase Order when identified by J.F. Taylor and the Government."  (ECF No. 46, at 26).  JET moves to dismiss the Counterclaim because various exhibits in the record purportedly contradict JFTI's assertion that JET was required to deliver certain software components necessary to make the ALF software reusable, including ALF Core and the Software Development Kit ("SDK").  (ECF No. 49, at 11–12).  JFTI responds that it has alleged enough to state a claim and any dispute about what the Purchase Order required is not appropriate to resolve on a motion to dismiss.  (ECF No. 52, at 4–5).  JFTI has the better argument.  The Counterclaim will proceed.

---

[4] Although JFTI requests leave to amend any of its defenses that are insufficient, (ECF No. 53, at 12–13), there is no indication that factual amplification could save the final four affirmative defenses.  Leave to amend is denied.

## A.    Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff."  *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)).  A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

21

### B.    Exhibits

As a threshold matter, the court must determine which documents may be considered on a motion to dismiss.  "As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]"  *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)).  The court may, however, consider documents attached to the challenged pleading as exhibits, explicitly incorporated into the challenged pleading by reference, or otherwise integral to the challenged pleading and undisputedly authentic.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation modified).  "[F]or an extrinsic document to be integral to a complaint the document must either give rise to a claim or be the basis of an element of a claim."  *Defs. of Wildlife v. Boyles*, 608 F.Supp.3d 336, 345 (D.S.C. 2022); *see also Goines*, 822 F.3d at 166.  "If the plaintiff's allegations in the complaint conflict with the plain language of the exhibit," then "the exhibit prevails."  *Roldan v. Bland Landscaping Co.*, No. 20-cv-276, 2021 WL 7185223, at *3 (W.D.N.C. Mar. 15, 2021) (quoting *Goines*, 822 F.3d at 166).

22

JET urges the court to consider five documents, only three of which are proper to consider on this motion to dismiss.[5]  To begin, ECF Nos. 1-3 (RFQ), 1-8 (email from Matt Campbell of JFTI seeking amendment of PO), and 1-9 (message history between Scott Jaster of JET and Jeff Williamson of PMA209 regarding the PO), which were attached to JET's original Complaint, are specifically cited and relied on in JFTI's Counterclaim.  (ECF No. 46, at 21–22, 23–24).  Although JFTI did not attach these documents to its Counterclaim, they were already in the record as attachments to JET's initial Complaint and JFTI clearly identified them as such by record citations.   These documents thus constitute part of the Counterclaim and will be considered.  The other two documents JET requests that the court consider, ECF Nos. 19-4 (email exchange regarding deliverables under the proposed PO) and 19-6 (email from Mr. Campbell to Mr. Jaster regarding PO deliverables), were neither referenced nor relied on in JFTI's Counterclaim.  Therefore, they

---

[5] All five documents were attached to either the original Complaint or the Amended Complaint.  Although they are thus part of the Complaint, Fed.R.Civ.P. 10(c), they remain extrinsic to the Counterclaim, unless attached thereto or incorporated therein. *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F.Supp.2d 840, 848 (N.D.Ill. 2008) (analyzing documents attached to the Complaint but not the Counterclaim as extrinsic to the Counterclaim)*; Carreno v. 360 Painting LLC*, No. 19-cv-2239, 2020 WL 4673826, at *2 (S.D.Cal. Aug. 12, 2020) ("Attachment to Carreno's Complaint doesn't make the documents part of the Counterclaim.").

may be considered only if they are integral to the Counterclaim.[6] They are not.  Although both documents discuss deliverables under the PO, they are not the original source of any contractual obligation or breach.   ECF Nos. 19-4 and 19-6 will not be considered.

### C.   Analysis

To state a claim of breach of contract, a plaintiff must plausibly allege that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."   *Taylor*, 365 Md. at 175 (citing *Continental Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977)).   To do so, a plaintiff must allege facts with certainty and definiteness showing the existence of such an obligation and breach thereof. *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 655 (2010).   Given that each party is suing the other for breach of the PO, they agree that the PO constitutes a binding contract.   The PO's standard terms and conditions provide that "[t]he seller shall only tender for acceptance those items that conform to the requirements of this order."   (ECF No. 46, at 23 (quoting ECF No. 1-6, at 2)). The parties likewise seem to agree that the RFQ contains the requirements of the PO.   (ECF Nos. 46, at 26; 49-1, at 13).   The core of the dispute is whether the software that JET delivered to

---

[6] Neither party disputes their authenticity.

24

the Government conformed to the requirements listed in the RFQ. JET's motion relies entirely on assertions that allegations in the Counterclaim in paragraphs 20 and 23 are refuted and categorically overcome by exhibits.  As noted above, not all those exhibits may be considered on this motion.  More importantly, the record demonstrates that the parties take divergent views on what the RFQ entailed and that it likely will be necessary to examine the entire course of dealing among the parties as well as the contours of the software being purchased to resolve, ultimately, the legal question of what was, or was not, included in the contract.  Myopic focus on a single document at this stage is inappropriate.  JFTI has alleged enough to state a plausible claim for relief.  JET's motion to dismiss the Counterclaim will be denied.

## V.    Motion for Sanctions

Finally, JET moves for sanctions against JFTI under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.  (ECF No. 56).[7]  Under Local Rule 105.8.b, "a party need not respond to any motion filed under Fed.R.Civ.P. 11 or 28 U.S.C. § 1927," nor will the court "grant any [such] motion without requesting a response."  JFTI has not

---

[7] JET mentions 28 U.S.C. § 1927 but makes no further argument regarding it.  Section 1927 is a separate sanction authority from Rule 11 that requires a finding of bad faith and a causal link between the misconduct and the unreasonable multiplication of proceedings.  *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018).  The court thus focuses only on Rule 11.

responded to JET's motion for sanctions, and the court will not direct JFTI to do so because the motion lacks merit.

"Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by *any* information obtained prior to filing.'" *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)).  JET singles out three allegations in the Counterclaim that it deems to be sanctionable misrepresentations.  First, JFTI's allegation that the PO, via the RFQ, contained a reusability requirement is purportedly false and contradicted by the record. (ECF No. 56-1, at 6).  Given the above determination that the Counterclaim plausibly alleges that there was a reusability requirement, this allegation is not sanctionable.  JET's belief that it is contradicted by other evidence reflects no more than a factual dispute that will be adjudicated at a later stage.  Second, JFTI characterized Mr. Jaster's statement in an email that the ALF software was "still in its infancy and need[ed] time to grow" as an admission of deficiency, which JET calls "a lie."  (*Id.* at 11 (quoting ECF No. 1-9, at 2)).  As evidence, JET points to Mr. Jaster's statement later in the email exchange: "For this PO, we have fulfilled it."  (*Id.* (quoting ECF No. 1-9, at 2)).  The fact that Mr. Jaster subjectively believed JET had fulfilled the PO does not mean JFTI could not interpret his comment about the

26

software being in its infancy to mean it was deficient in terms of reusability.  Far from being a lie, then, this allegation simply represents JFTI's opinion regarding the meaning of Mr. Jaster's statement.  Third, and finally, JET takes issue with JFTI's allegation that JET delivered the software under the PO to the Government on September 22.  (*Id.*).  JET states that it delivered the software to the Government on September 9, and that JFTI effectively admitted that fact in its Answer.  (*Id.* at 12).  Although JET does not explicitly say so in its motion for sanctions, this distinction is theoretically important because the due date for the software delivery was September 11.  (*Id.* at 8).  But JFTI does not rely on any allegation of late delivery in its breach of contract counterclaim, nor does it even mention the due date therein. So, any possible error regarding the delivery date is immaterial and not sanctionable.  *See Jack. Airport, Inc. v. Michkeldel, Inc.*, 434 F.3d 729, 732 (4th Cir. 2006) (affirming the denial of a sanctions motion where the substance of the alleged misconduct was "immaterial").

JET's motion for sanctions is unwarranted and will be denied without requesting a response from JFTI.

## VI.  Conclusion

For the foregoing reasons, JET's motions to direct entry of final judgment, to dismiss the Counterclaim, and for sanctions are

27

denied, and its motion to strike defenses is granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
